# Malone & Foote *v.* Marriott.

*Bill in Equity for Foreclosure of Mortgage.*

1. *Decree of foreclosure; whether final, or interlocutory.*—A decree of foreclosure and sale, under a bill filed by a mortgagee, is partly final, and partly interlocutory; that is, it is so far final that an appeal will lie from it, and it is also interlocutory, in a limited sense, inasmuch as further proceedings are contemplated, and necessary to carry it into effect.

2. *Same; discontinuance.*—The cause remaining *in fieri* after the rendition of such decree, it is not discontinued by the omission of the register to continue it on the docket, nor by his failure to execute the order of sale, not being required by the complainant to execute it; unless the lapse of time is sufficient to raise a presumption of payment or extinguishment.

3. *Assignment of such decree, or of mortgage debt.*—If the complainant assigns his decree of foreclosure, or assigns the mortgage debt after the rendition of such decree, it is not indispensably necessary that the assignee should be brought in as a party; though he may appear, and propound his interest, when necessary to protect his rights against subsequent transactions between his assignor and the defendants.

4. *Purchase pendente lite.*—A purchaser from the mortgagor, pending a suit to foreclose, buys at his own peril, and is bound by the proceedings, whether he is made a party or not; and he can not claim to have the proceedings suspended until he is brought in as a party.

5. *Partial payments after decree of foreclosure; how made available.* —When partial payments are made on the mortgage debt, after the rendition of a decree of foreclosure, and the mortgagee refuses to recognize and allow them, the chancellor may, in vacation, on petition filed, verified by affidavit, order a suspension of the decree until the balance properly due can be ascertained; but such petition must state with particularity the amounts and dates of the several payments claimed to have been made, and must aver the complainant's refusal, on request, to allow them.

6. *Same; parties to petition, and practice.*—The complainant in the decree of foreclosure, or his assignee having an interest in its execution, should be made a party to such petition; and when a suspension of the decree is ordered on the *ex-parte* application of the defendant, he should be required to give ample security to indemnify the parties in adverse interest, as in the analogous case of superseding an execution at law on account of partial payments.

7. *Release of part of lands from mortgage; remedy of purchaser.*—If the complainant has released a portion of the mortgaged lands, in favor of a purchaser from the mortgagor, the purchaser may intervene by petition, and ask a suspension of the decree as to the lands so released; but the assignees of the decree are necessary parties to such petition, and a suspension of the decree should not be granted without requiring ample security to protect and indemnify the parties thereby delayed; nor is it proper to make the register in chancery a party to the petition.

8. *Injunction against waste by mortgagor.*—A mortgagor in possession, committing waste after a decree of foreclosure had been rendered, but before it has been executed, may be restrained by injunction.

VOL. LXIV.

[Malone & Foote v. Marriott.]

APPEAL from the Chancery Court of Monroe.

Heard before the Hon. CHARLES TURNER.

The original bill in this case was filed on the 18th March, 1869, by the Mobile Savings Bank, a corporation chartered under the laws of Alabama, against Thomas G. Barr, a non-resident; and sought to foreclose a mortgage on a large tract of land in said county, containing over six thousand acres. The land was sold and conveyed to Barr, in February, 1866, by James Daniel; and the mortgage, which was dated the 7th February, 1866, was given to secure the payment of a note for $4,000 in gold, payable on the 1st February, 1867, for a part of the purchase-money. The note and mortgage were assigned by Daniel, on the 2d March, 1866, to the complainant, and were made exhibits to the bill, together with the assignment. A decree *pro confesso* was regularly entered against Barr, on publication against him as a non-resident, on the 4th October, 1869 ; and on the 25th October, 1869, during a regular term of the court, the cause being submitted for final decree, the chancellor rendered a decree for the complainant, and ordered the register to state an account of the mortgage debt. The register made his report on the next day, showing the balance due on the mortgage debt to be $3,845.86, and it was confirmed without objection ; and afterwards, during the same term, the chancellor rendered a final decree of foreclosure and sale, requiring the execution of a refunding bond by the complainant before proceeding to execute the decree. A refunding bond was executed by the complainant, conditioned as required by the decree, on the 13th November, 1869 ; but nothing further was done in the cause until the April term, 1878, when, " on motion of the complainant," the cause was reinstated on the docket, and continued until the next term. On the 14th June, 1878, another refunding bond, conditioned as required by the decree, was filed by Malone & Foote, claiming to be the assignees and owners of the decree ; and the register thereupon advertised the lands for sale under the decree. On the 17th July, 1878, a petition was filed by C. M. Marriott, under oath, alleging that, since the rendition of the decree, he and his wife had purchased from Barr, the defendant in the foreclosure suit, four thousand acres of the tract conveyed by the mortgage ; that on the 11th November, 1875, Malone & Foote, as the assignees and owners of the chancery decree, for a valuable consideration paid to them by the petitioner, released said land from the decree ; and that the decree had been " very nearly, if not altogether, paid and satisfied." The petition alleged, also, that the cause had, for several years, disappeared from the docket, and no steps had been taken to

[Malone & Foote v. Marriott.]

revive it; and the petitioner insisted that it had become dis-
continued, and the decree could not be executed unless prop-
erly revived. The register in chancery was made the only
defendant to the petition, and the prayer was that he be re-
strained from further proceedings to execute the decree. On
the same day the petition was filed, the register also filed his
answer to it; and on the 22d July, 1878, on consideration of
the petition and answer, the chancellor made an order, re-
straining further proceedings by the register, but without
prejudice to the right of the complainant, or the assignees of
the decree, "to proceed in any proper manner to revive said
decree." On the 23d August, 1878, Malone & Foote filed
their petition, under oath, setting out the proceedings which
had been taken in the cause, as above stated; alleging that
a balance of $3,200, with interest, was still due on the decree,
and that Marriott and wife, who were in possession of the
land which they claimed to have purchased from Barr, were
cutting timber, and greatly impairing the value of the land.
The petitioners insisted that the cause had not been discon-
tinued, and that they had a right to proceed with the execu-
tion of the decree; and they prayed that Marriott and wife,
who were made defendants to the petition, might be enjoined
from the further commission of waste, that the restraining
order made at their instance might be set aside, and that the
complainants be allowed to proceed with the execution of
their decree. On the filing of this petition, the chancellor
refused to set aside the former restraining order, but granted
a temporary injunction against the commission of waste; and
afterwards, Marriott and wife having answered and demurred
to the petition, he sustained the demurrer, dissolved the in-
junction, and dismissed the petition, holding that the com-
plainants could only obtain relief by bill.

This decree, and each part thereof, is now assigned as error.

S. J. CUMMING, for appellant.

STEWART & PILLANS, contra. (No briefs on file.)

BRICKELL, C. J.—The decree of foreclosure and sale,
rendered on the 27th October, 1869, under our decisions and
practice, is partly final, and partly interlocutory. Adjudging
the equities, and settling the rights of the parties, it is so far
final, that from it an appeal would lie; yet, as further pro-
ceedings are by it ordered and contemplated, and were nec-
essary to its completion, and letting the complainant in to
the full benefits to which it was determined he was entitled,
it is, in a limited sense, interlocutory. The cause was not by

it finally disposed of : it remained a cause *in fieri*, under the control of the court, in which further proceeding were necessary to carry the decree rendered into full effect.—*Jones v. Wilson*, 54 Ala. 50 ; 2 Dan. Ch. Pr. 986-7, and notes.

2. The cause remaining *in fieri* in court, there was no discontinuance of it by the omission of the register to continue the case on the docket, nor by his failure to execute the order of sale, though the complainant may not have required its execution.   The practice is settled, by numerous decisions of this court, that if there be not some positive intervention or direction by a plaintiff or a complainant, the neglect of a clerk or a register to docket a cause, and the failure to take orders therein for several terms, will not operate a discontinuance, unless the lapse of time is so great that a presumption of payment, or of extinguishment, would arise.—*Hatchett v. Billingslea*, at the present term ; *Ex parte Remson*, 31 Ala. 270 ; *Forrester v. Forrester*, 39 Ala. 320 ; *Wiswall v. Glidden*, 4 Ala. 357; *Brown v. Clements*, 24 Ala. 354.   This practice may induce *laches* in the prosecution of suits, and may sometimes be productive of injustice to defendants who have been lulled into indifference by the negligence of their adversary ; and it may have been better that the rule should have been established, that the *laches* of a party prosecuting a suit, whenever it produces a chasm in the proceedings, should operate a discontinuance.   Parties to pending suits, in courts of law, or of equity, are bound to diligence in the prosecution or the defense.   Without the concurring *laches* of the actor, it is simply impossible that, by the *laches* of a ministerial officer, a pending suit should be dropped from the docket, and an omission to enter proper orders, keeping it alive from term to term.   We must adhere to the rule, as it has been settled by a chain of decisions, running through a period of forty years.   In this case, it is apparent the delay in the execution of the interlocutory decree was at the instance, and for the benefit of the parties complaining of it, affording, and intended to afford them, the opportunity of paying the mortgage debt without a sale under the decree. Their complaint of the delay has not a very gracious aspect, and the rule operates beneficially, not harshly, in the present case, so far as it is now disclosed.

3. There was no change of right, or interest, which rendered it necessary to the execution of the decree, that other parties should be brought before the court.   The assignment by the complainant of the decree, or of the mortgage debt, which was merged in the decree, did not render it *indispensable* that the assignees should be made parties, or file a *bill of revivor or supplement*, as it is urged they should have done,

presenting their rights for the consideration of the court. The assignment operated a license to continue the suit to a final termination, in the name of the assignor. Or, if deemed necessary for the protection of the assignees, they could, by appropriate pleading, introduce the assignment, avoiding the necessity of proving notice of it, and preventing subsequent transactions with the assignor, which might affect their rights. Either course was open to them; and electing to continue the proceedings in the name of the assignor, is not the cause of just complaint by the defendant, for the assignee, as well as the assignor, will be bound and concluded by all that has been, or may be done in the progress of the cause.—*Ex parte Railroad Co.*, 95 U. S. 221; 1 Dan. Ch. Pr. 220-21 ; 2 Brick. Dig. 153, § 312.

4. Nor did the conveyance, *pendente lite*, by the mortgagor, of a part of the mortgaged premises, to Marriott and wife, render it necessary that they should be introduced as parties. An intermeddler with property, the subject of pending litigation, can not claim that the proceedings shall be suspended or delayed, until he is made a party. It is at his own peril that he purchases, and he is as conclusively bound and affected, as if he had been made a party. Otherwise, by successive alienations, litigation could be protracted, and the administration of justice delayed indefinitely.—*Chaudron v. Magee*, 8 Ala. 570 ; *Tilton v. Cofield*, 93 U. S. 163.

5. If there had been payments made on the mortgage debt, subsequent to the rendition of the decree of sale, which the assignees refused on request to recognize and allow, and they were requiring a sale for the entire debt, or for more than was justly due, it would have been competent for the chancellor, on a petition properly verified by the mortgagor, or by his assignee, in vacation, to have suspended the execution of the decree until the amount of such payments was ascertained, and the balance of the mortgage debt, or of the decree, was declared. Such a suspension should not be granted, upon a petition merely averring, in general terms, the fact that payments had been made; not stating them with any certainty as to time or amount. Nor should such suspension, in any case, be allowed, upon a petition, to which the parties having interests in the execution of the decree are not made parties; nor unless it is distinctly averred that they have been requested and have refused to allow the payments, or some of them, or some just excuse for the omission to make the request is shown. Parties are not to be compelled into the vexation and expense of litigation they do not provoke, either by negligence, or by some positive action. And when the order of suspension is made upon the *ex-parte* application of

a party bound by the decree, and under the duty of payment, he should be required to give adequate security to the parties who are delayed, to protect and indemnify them, if the complaint is ascertained to be wrongful—if it is not prosecuted to effect. This is the rule prevailing at law, when the execution of a judgment is superseded, because of matters alleged to have occurred subsequent to its rendition; and the same rule should be observed in chancery.

7. If, as is averred in the petition of Marriott, the assignees of the decree had released the lands conveyed to him, this would have been sufficient ground for suspending the execution of the decree as to the sale of these lands, until the fact of release could be ascertained and declared. Such suspension could properly be obtained on petition. But to such petition the assignees are indispensable parties; and the suspension should be confined to the lands claimed to have been released, leaving the decree of full force, and the sale of the other lands to be made, if the complainant so elects. Nor should the suspension be granted, without requiring adequate security to protect and indemnify the parties delayed. Statutory authority is not necessary to enable a court of equity to require from parties who seek to delay the execution of its orders and decrees security against a wrongful interference with the rights of parties which have been judicially ascertained and declared.—High on Inj. § 3947; *Hamner v. Cobb*, 2 St. & Por. 383; *Dudley v. Witter*, 46 Ala. 664; *S. C.*, 51 Ala. 456.

The inception of the errors in this cause proceeded from entertaining the original petition of Marriott, and the order made thereon, temporarily suspending the execution of the decree of sale. There was no party defendant to that petition, but the register of the court of chancery; and there was manifest impropriety in introducing him as a party. He was simply obeying the decrees of the court, in proceeding to a sale, and had no right or interest involved. Neither the complainant in the decree, nor the assignees of the decree, though the assignment is averred, were made parties; and no security was required, as a condition precedent to the order of suspension. The petition is vague and indefinite as to the fact of payments made on the decree, and is without averment that the assignees had been requested and were unwilling to allow all payments claimed. Decrees of sale would be of little value, if they were subject to suspension in this mode. The order of suspension was directed, not only against the sale of the lands conveyed to Marriott, and claimed to have been released by the assignees, but the other lands not conveyed, and in which he had not, and did not claim an interest. The

[Malone & Foote v. Marriott.]

order should have been discharged, and the petition dismissed.

The error pervading the entire proceedings of the chancellor has its foundation in the hypothesis pressed by the counsel for the appellees, that the decree of sale rendered in 1869 had, by the lapse of time, lost its energy and vitality, and could be restored and revived only by a bill of revivor or supplement, or a bill to carry it into execution. That hypothesis cannot be supported, as we have already seen. The cause in which the decree was rendered, was a cause pending in court; no abatement or discontinuance had occurred; the sale ordered was necessary, to carry into effect the interlocutory decree which had been rendered. The assignees had the right to demand its execution, and prosecute the suit to a final decree. It was the duty of the chancellor to reinstate the cause on the docket, and to leave the register to proceed in the execution of the decree of sale, as he was instructed by the parties in interest—the assignees. If circumstances had intervened, rendering its execution inequitable, partially or wholly, these could have been presented by petition, and an order of suspension obtained on equitable terms, as we have indicated, until due inquiry into them was made, and the present rights of the parties ascertained and declared.

8. The petition of the assignees, Malone & Foote, was unnecessary, except so far as it sought an injunction against Marriott and wife, their tenants, lessees, or licensees, to stay waste on the mortgaged premises. On the filing of the petition, the chancellor ordered a temporary injunction, which was subsequently dissolved, and the petition dismissed. The petition discloses the insolvency of Marriott, and of the mortgagor; that the chief value of the lands consists in the pine trees and other trees valuable for lumber growing thereon, which he is cutting and removing, and permitting to be cut and removed therefrom, and thereby the value of the lands will be depreciated, and the mortgage rendered an insufficient security for the payment of the mortgage debt. That Marroitt stands in the place of the mortgagor, affected and bound by the decree rendered against him, having no other or greater rights, we have already declared. That, after a decree of foreclosure of a mortgage, the mortgagor remaining in possession, will, on application, be restrained from committing waste, is recognized in England.—*Wright v. Atkins,* 1 Ves. & Beames, 314; *Barlow v. Gains,* 8 Beavan, 329; *Goodman v. Kine, Ib.* 379. The right of a mortgagee to the interference of a court of equity, to prevent the mortgagor in possession from the commission of waste, rests upon the broad equitable consideration, that, during the life of the mortgage, the se-

curity it affords ought to be preserved unimpaired; that the mortgagor, and whoever stands in his shoes, is in conscience bound to its preservation. And when, as in this State, the mortgagee is regarded as the owner of the fee, and the mort- gagor in possession as his tenant, there is additional ground for interference to restrain waste.—High on Inj. §§ 313-14. There can be no substantial reason for interference before, and not after a decree of foreclosure and sale, which settles conclusively the rights and equities of the parties. We think the chancellor erred in dissolving the injunction, and in not retaining the petition of Malone & Foote, as an application to stay the waste on the mortgaged premises, it was averred was being committed.

The decree must be reversed, and a decree conforming to this opinion will be here rendered.