# Voltz *v.* Voltz.

*Bill in Equity by Ward to vacate and set aside Settlement made with Guardian, and for an Account.*

1. *Contract by infant; ratification of.*—If an infant, on arriving at age, with a knowledge of all the facts, ratifies a contract for the purchase of lands made by him during infancy, in the absence of any relation of trust or confidence between him and the vendor, and of fraud practiced upon him, he will not afterwards be heard to complain; and if, after attaining his majority, with knowledge of all the facts, he deals with the property in a manner inconsistent with his right to rescind, or waits an unreasonable time before he asserts that right, this operates a constructive ratification, which will uphold the contract.

2. *Same; ratification of, as between guardian and ward.*—But when the contract is between an infant and his guardian, the courts exercise a narrower scrutiny of the transaction, and exact fuller and clearer proof of fairness, before yielding their sanction thereto; and even after the relation of guardian and ward has terminated, all dealings in property between them are regarded with distrust and *prima facie* disapprobation, until, by lapse of time, the presumption of undue influence has been overcome.

3. *Settlement by guardian with ward; when suit to set aside not barred by undue delay.*—On a settlement by a guardian with his ward, which was agreed on, reduced to writing and signed when the latter was eighteen years of age, the ward agreed to accept, in full discharge of the guardian's liability to him, certain real and personal property, the value of which did not exceed half of the amount of the guardian's liability; and about a year thereafter, the ward having been relieved of the disabilities of nonage, the guardian and his wife, in consummation of the settlement, executed to the ward a conveyance, and the ward, acting without advice of counsel, and not being advised by the guardian to seek such advice, received possession of the property, and executed to the guardian a release. The real estate, which constituted the bulk of the property forming the consideration of the release, belonged to the wife, as her statutory separate estate; and of this fact the ward had knowledge at the time the conveyance was executed, but he did not know that, as to the real estate, the conveyance, being of the statutory separate estate of the wife in payment of her husband's debt, was void. *Held,* on a bill by the ward to vacate and set aside the settlement and release, and for an account, filed more than five years after the execution of the conveyance (during which time he continued in possession of the property, using and enjoying the same as his own), but without delay after having been advised by counsel of the legal effect of the conveyance, that the conclusive presumption, that all men know the law, does not apply; that the ward's ignorance of the effect of the conveyance was a complete answer to the objection of undue delay in the assertion of his rights; and that he was entitle to relief.

4. *Amendment of bill in equity; demurrer to original bill not visited on.*—The bill, as originally filed, failing to offer to surrender the deed executed by the guardian and his wife for cancellation; etc., a demurrer was interposed on this ground, when the bill was amended by adding to one

[Voltz v. Voltz.]

of the sections the words, "And complainant hereby offers to do in the premises whatever the court shall direct;" but to the bill as amended no demurrer was filed. *Held*, that while on demurrer the bill as amended was scarcely sufficient, yet, the defect being amendable, the demurrer to the original bill could not, on appeal, be visited on the amendment, but that, to enable the complainant to take advantage of the defect, he must show by the record that he invoked the judgment of the primary court, by demurrer, upon the sufficiency of the amendment.

5. *Decree relieving married woman of disabilities of coverture; when void.*—A decree relieving a married woman of the disabilities of coverture, based on a petition which fails to aver that she owned any separate estate, is *coram non judice* and void; and hence, a deed executed by the guardian's wife after having obtained such a decree, conveying to the ward the lands covered by the first deed, is also void.

6. *Conveyance of land, the wife's statutory estate, in payment of husband's debt; when not affected by subsequent conveyance by him to her of other lands.*—The fact that, a short time before the commencement of the suit, the husband conveyed to his wife another and more valuable tract of land, in performance of a verbal contract made by him with her at the time of the execution of the conveyance and release, does not render the ward's title good, nor bind him to accept a title requiring litigation, delay and expense to render it indefeasible, even if a court of equity would approve and confirm the conveyance; nor does the conveyance derive any support from the antecedent verbal contract to convey.

7. *Decree setting aside settlement between guardian and ward; effect of failure to order restitution of property and cancellation of deed received by ward.*—On appeal from a decree rendered in such case, setting aside, vacating and annulling the settlement made by the guardian with his ward, and ordering another and final settlement, the failure to require a surrender of the property received by the ward, and a cancellation of the deed executed to him, can not be the subject of assigned error, though such surrender and cancellation are necessary to a complete determination of the cause; they being mere details in the execution of the decree, not pertaining to the equity of the bill, as to which the decree is interlocutory, though final in the sense that it will support an appeal.

8. *Same; when direction as to taking account will not be considered on appeal from.*—Nor on appeal from such decree is it subject of assigned error, that the chancellor instructed the register, in stating the account against the guardian, to charge him with the balance ascertained against him on his last partial settlement in the probate court, allowing him credits for proper and legal expenditures made by him for his ward between the time of such annual settlement and the settlement sought to be set aside. If either party desires to go behind the partial settlement, this is a question of fuller instructions to the register, to which he is entitled on petition or motion therefor.

9. *Same; effect, on appeal, of failure to charge ward with rents.*—While the ward is chargeable with the rents of the land while in his possession, with interest from the end of each year, subject to abatement for taxes paid, and for permanent improvements, if any remain which were placed thereon by him, yet, pertaining as they do to the execution of the decree, as to which it is also interlocutory, the failure to instruct the register to charge the ward with such rents, in stating the account against the guardian, is not, on appeal from the decree, ground for reversal.

10. *Same; ward chargeable with rents as payments.*—The husband being estopped, in such case, by his conduct and conveyance, from recovering the rents by any active measure of relief, and the wife not being able, by reason of such estoppel, to recover in his right, the rents will be treated as if they had been realized and then paid by the guardian in part liquidation of his indebtedness to his ward.

VOL. LXXV.

[Voltz v. Voltz.]

APPEAL from City Court of Selma.
Heard before Hon. JON. HARALSON.
The facts are stated in the opinion.

PETTUS & DAWSON and SATTERFIELD & YOUNG, for appellants.

1. The admitted fact that the ward did not get as much in value as his guardian owed him, would have authorized the setting aside of the settlement, if suit had been brought *within a reasonable time.* But on the principles of ratification, election and estoppel, the complainant is now cut off from all relief. The contract of May 4th, 1875, was voidable, and not void.— *Weaver v. Jones*, 24 Ala. 420 ; *Philpot v. Bingham*, 55 Ala. 435; Tyler on Infancy, 76–8, and cases cited. " Voidable means, not invalid until ratified, but valid until rescinded." Wharton on Con. § 56. The law on the subject of ratification is well settled. The principle is stated in Wharton on Con. § 58. In *Manning v. Johnson*, 26 Ala. 446, the rule applicable to cases like this is laid down as follows: "If an infant, after he arrives at age, is shown to be possessed of the consideration paid, whether it be property, money or choses in action, and either disposes of it so that he can not restore it, *or retains it for an unreasonable length of time after attaining his majority, this amounts to an affirmance of the contract.*" This point discussed at length, with following citations: *Jackson v. Harris*, 66 Ala. 565 ; *Gurley v. Davis*, 7 Ala. 317 ; *Thomason v. Boyd*, 13 Ala. 419 ; *Delano v. Blake*, 11 Wend. 85 (25 Am. Dec. 617); *Cheshire v. Barrett*, 4 McCord, 241 (17 Am. Dec. 735); *Aldrich v. Grimes*, 10 N. H. 194 ; *Bigelow v. Kinney*, 3 Vt. 353; *Richardson v. Boright*, 9 Vt. 368 ; *Chesterfield v. Janssen*, 2 Ves. sr., 125 ; *Pintard v. Martin*, 1 Smedes & Mar. Ch. 126 ; *Henry v. Root*, 33 N. Y. 526 ; *Robinson v Cullum*, 41 Ala. 693 ; *Daniel v. Modawell*, 22 Ala. 365 ; *Franklin v. Thornebury*, 1 Vernon (Ch.), 132 ; *Kern v. Burnham*, 28 Ala. 428. There is one distinction in cases of delay which must be constantly kept in mind. It is this : Where a person receives nothing, and is in possession of nothing, he does not ratify, or affirm, or elect to be bound, simply by waiting. He has nothing with which he can deal so as to effect an estoppel. Not so where the person has received property. If he retains it and uses it as his own, he ratifies the contract.—*Ferguson v. Lowery*, 54 Ala. 514, distinguished.

2. At the time of the settlement, *no fact* was concealed from the plaintiff; he then knew *every fact* connected with the transaction, and he was well acquainted then with the property which he received. This absence of concealment, this knowledge of the *facts*, plainly distinguishes this case from nearly every case cited by counsel for the appellee. In

nearly every one of those cases, there appears either a conceal-. ment of a *fact*, or a want of knowledge of a *fact*, which induced the court to grant the relief. The real question here presented is, whether the plaintiff's *ignorance of the law*, established, if at all, *only* by his affirmation, will avoid the effect of an *election*, proved not by mere assent to what had been done, but by facts established by the plaintiff himself and by all the witnesses—an *election* which the law infers from the facts as absolutely as it infers an intention to kill from a deliberate killing with a deadly weapon. After quoting from the opinion in *Hardigree v. Mitchum*, 51 Ala. 153–4, discussing the maxim, *Ignorantia legis non excusat*, and noticing the qualification there announced to the effect that where ignorance of the law " is *induced* " by fraud or undue influence, the application of the maxim is relaxed, counsel proceed : The " relaxation of the rule," there stated is in exact harmony with the rule of law which gives a reasonable time to ascertain a *fact* which has been misrepresented to the party when that fact is open to the inquiry of both parties. If the fact misrepresented is within the knowledge of the party misrepresenting it, then the law allows the party to move when he has discovered this hidden fact. The law, what is law, can never be regarded as a hidden thing ; and a knowledge of the law is open to the inquiry of all persons alike. And we submit that to allow a man to justify his gross *laches* merely on his *ignorance of the law*, though that ignorance were induced by another, would be exactly the same thing as to allow unreasonable delay after he had been put upon inquiry as to the truth of a matter of *fact* misrepresented to him. Every man *sui juris* is in all cases put on inquiry as to the law. There are in the books many " *dicta*" expressed on the bench in reference to " knowledge of the law," or that the contract is " impeachable," which are without any foundation in the facts or law of the case under consideration. In *Morse v. Wheeler*, 4 Allen, 570, some of these cases are discussed. That was a case where an infant purchased cattle, paid part in cash, and after becoming of age promised to pay the balance. It was insisted as a defense that when the promise was made the defendant did not know that his original contract was " impeachable," but the Supreme Court of Massachusetts repudiated the defense, on the ground that the defendant *was presumed to know the law* ; and in the opinion that court reviews many of the *dicta* in the English and American cases, including what is called the " unreasoned case " of *Hinely v. Marguritz*, 3 Barr, 428. See, also, Wharton on Contracts, § 57. The case of *Kern v. Burnham*, 28 Ala. 428, is relied on as a case on " all-fours " with the one at bar. That case establishes beyond the

·possibility of a doubt, that the case at bar is a case of *election*.
The contract was *executed*.    The plaintiff, if he would avoid
the contract, must become *the actor*, and must move within a
reasonable time.    He knew all the *facts* at the time the con-
tract was made.    He was then in law *sui juris* ; and, with
the duty on him to *elect*, he remained in possession, treated all
the property which he had received as his own for about five
years and five months, without complaint of any kind, or any
offer to rescind, before bringing his suit.    Surely this is an
*election* on the part of the plaintiff " to treat the contract as a
valid and subsisting one."

3.    If the confidential relation of the guardian creates a dis-
tinction between this and ordinary contracts of infants, it only
amounts to this, that the infant, in cases like the present, is
allowed a *reasonable time*, within which to make his *election*.
It is still a clear case for *election*.    In ordinary cases the time
for election is very short after majority.    Holding beyond the
rent day, disposing of personal property received as his own,
establishes an election in cases of executed contracts ; and even
in cases of executory contracts made by infants, ordinarily a
mere promise, after majority, to pay is binding on them.    In
ordinary cases *no time* is allowed infants when they, after ma-
jority, treat the property purchased as their own.    For such an
act, after majority, is conclusive evidence of an *election* to treat
the contract as valid, and estops the infant to say that he is not
bound by it.    An election made, in such case, can not be
avoided ; nor can an election once made, with full knowledge
of the facts, be avoided in any case ; for an election is an estoppel.
Otherwise, this right of election, after majority, to avoid a con-
tract would be converted from a shield into a sword.

4.    The complainant having had, when the contract was
made, a full knowledge of the facts, the question is narrowed
down to what is a reasonable time in such case for him to make
his election.    The right and the duty of electing were on him
the day on which he became in law *sui juris*.    After this period
he waited over five years and four months ; and during all that
time, he constantly used and disposed of, as his own, property
which he had received under the contract.    This was too long
to wait.—*Kern v. Burnham, supra*.    This case is not one of
simple ratification by agreement on becoming of age, or soon
afterwards, but is much stronger ; for it is a case, as we have
shown, of *election*, and a case in which the plaintiff was bound
to elect within a reasonable time.    In many cases of ratifica-
tion, the doctrine of election is not involved, and the court is
asked to consider the legal effect of this rule of election.    This
doctrine of election or estoppel, resulting from acts which the
law declares to be an election, must, in this case, be considered

[Voltz v. Voltz.]

in connection with the broad distinction between executory and executed contracts ; and when so considered, it seems to us that it is impossible to avoid the conclusion, that the plaintiff, by holding and enjoying the fruits of the settlement for more than five years after attaining his legal majority, with full knowledge of the facts, is conclusively presumed to have *elected* to treat that settlement as valid.

5. In *Jackson v. Harris*, 66 Ala. 565, a case like this, it is said : "But the law, in this class of cases, as in all others, requires diligence of parties who invoke its remedial aid." In this case the plaintiff needed no diligence to discover the *facts*, for as to them he was fully informed at the time of the settlement. Must he use no diligence to discover the *law* which is open alike to the inquiry of all mankind? Where facts are hidden within the bosom of the man who perpetrates a fraud, a different rule is prescribed by law from cases where the facts are known to many, or are of record ; for, in the latter cases, diligence will discover them, but in the former, it is only by accident, or something of that nature, that the fact is made known. If ignorance of the law would excuse delay, will it also excuse an absolute want of diligence? The rule is, that a party must be diligent in all cases when he seeks the remedial aid of the court; yet, this rule will have to be abolished in this case if relief is granted complainant. Could a man, diligent to ascertain what the law was in this case, have failed to discover it in five years and four months? The question must receive a negative answer.

6. The real consideration to Mrs. Voltz for her land was the "River place," and the consideration paid by the plaintiff was the release. As between husband and wife, there was an exchange of places. It is true that this agreement was verbal at the time of the settlement, but the husband's conveyance to her, afterwards executed, was in accordance with the verbal agreement. Mrs. Voltz is a party to this suit, and she is willing, and offers in her answer to ratify and confirm this exchange of places ; and this she attempted to do in another form, but, owing to a technical defect, she failed to accomplish her purpose. So it is insisted that, whatever may be said with reference to the legal title, the plaintiff has a perfect title in equity to the "Chesnut place," the lands sought to be conveyed to complainant. The general rule is admitted, that a mortgage or other conveyance of the statutory separate estate of the wife, *merely* to secure or pay her husband's debts, is invalid. But that is not this case. The wife, at common law, and under our statutes, is capable of purchasing and receiving title to land, if the husband assents thereto, either expressly or by making no objection.—*Marks v. Cowles*, 53 Ala. 504; *Lee v.*

[Voltz v. Voltz.]

*Sims*, 65 Ala. 248; Kelly's Con. of Married Women, pp. 131-4, and authorities there cited. The legal effect of the transactions between the parties in this case was the purchase of the "River place" by the wife, she giving in exchange therefor the "Chesnut place." This case is, therefore, not distinguishable from *Kern v. Burnham*, 28 Ala. 428.

7. The amendment to the original bill did not cure the defect pointed out by the demurrer. The general offer to do equity, contained in the amendment, is insufficient.—*Eureka Co. v. Edwards*, 71 Ala. 248; *Manning v. Johnson*, 26 Ala. 446; Tyler on Infancy, pp. 77-9, and cases cited. The amendment states no fact, but merely an *offer*, and required no answer. It did not make an *amended bill.— Cain v. Gimon*, 36 Ala. 173. And it took "effect as of the time of the filing of the bill." *Crews v. Threadgill*, 35 Ala. 342. Not curing the defects in the original bill pointed out by the demurrer, its effect is not avoided, nor was it waived by failure to demur to the bill after amendment. This point argued at length. Again: The demurrer was treated and considered in the court below, by the court and the parties, as applying to the bill as it was at the hearing. It was there argued and considered, and, in the final decree, was overruled. Its existence and application are questioned for the first time in this court. It should, therefore, be considered in this court as applying to the bill as it was at the time of the hearing.—*Shaw & Co. v. Lindsey*, 60 Ala. 349. While the defects pointed out by the demurrer do not go to the substantial equities *claimed for the complainant*, and are amendable, they do go to the substantial equities *of the case made by the bill;* for in every case like this the *defendants have equities* which the court *must protect*. These *equities of the defendants* were clearly pointed out by the demurrer, and are, (1) the rents of the Chesnut place for nine years; (2) possession of that place; and (3) a cancellation of the deed executed to the complainants. These equities can not be decreed the defendants in the absence of an offer in the bill; for it is only by such offer that the court acquires *jurisdiction* to grant the necessary relief against complainant to the defendants. *Tucker v. Holley*, 20 Ala. 426; *Rodgers v. Torbut*, 58 Ala. 525; *Eslava v. Crumpton*, 61 Ala. 514; 1 Story's Eq. Jur. (12 Ed.) p. 58, § 64*e*.

8. The decree of the lower court is erroneous in failing to decree these *substantial equities* to the defendants. That court considered the question of rents in its opinion, and *expressly refused* to allow them, saying that "they are matters that do not appertain, legitimately, to this litigation."

9. A partial settlement of a guardian is not conclusive on either party; it is merely *prima facie* evidence of the correct-

36

ness of the balance thereby ascertained ; yet, the chancellor, in his decree, has made the last partial settlement made by the guardian final and conclusive against him and his sureties, by ordering the register to charge him with the balance then ascertained, with interest thereon. In effect, the decree prohibits the guardian from proving any credits anterior to that partial settlement. This was erroneous.

BROOKS & ROY, contra.—1. The rule as to settlements in cases like the present : (1) It is always material that the ward should · have competent, independent, disinterested advice. (2) There must be no substantial inadequacy of price or consideration. (3) There must be no ·misrepresentation or concealment of any material fact, nor just suspicion of artifice. (4) There must be full disclosure of all the facts and circumstances within the trustee's knowledge, which will enable the cestui que trust to deal with him on equal terms. (5) There must be the most abounding good faith on the part of the guardian ; he must not only bring to his ward's knowledge all that he himself knows in the premises, but he must take no advantage of his own position, influence, or knowledge.—Ferguson v. Lowery, 54 Ala. 512 ; Malone v. Kelley, 54 Ala. 538–9, 540 ; Johnson v. Johnson, 5 Ala. 95 ; Jackson v. Harris, 66 Ala. 565. And, as if to sum up all the commandments into one, our court has further said of .such a contract : " It must be kept free from the taint of selfish interests and overreaching bargains."—Thompson v. Lee, 31 Ala. 305. And it has been repeatedly held, that any alleged confirmation or ratification of such a contract or settlement, to have that effect, must be with the same " full knowledge of all the facts," and with the intent that such act should confirm it."—Thompson v. Lee, 31 Ala. 297 ; Johnson v. Johnson, 5 Ala. 90. The principle upon which this rule is based, is obvious. In such cases, the contract itself, however solemn and deliberate, is ·invalid unless entered into with such ·full knowledge and intent ; and acts of alleged confirmation or ratification, to be operative as such, must necessarily be with the same full knowledge, and the same intent. Otherwise, greater operation and effect would be attached to the casual and informal acts of the party, than to his formal and deliberate contract.

· 2. The bill in this cause was filed in due time. All that is required in any such case is, that the action be " seasonable." What is seasonable in any given case depends, first, upon the analogies of the statutes of limitations, and beyond that upon the particular facts of each case. Under the English rule such actions were frequently maintained after the lapse of thirty and forty, and even fifty years ; and when our courts have used the

term " seasonable," as defining the time in which such actions should be brought, in this State, they have done so with reference to the English rule of allowing thirty and forty years, and with a view to reducing the time, by analogy to the statutes of limitations, to a *minimum* of six years, where there are no special facts or circumstances to authorize an extension beyond that time.   But no rule, authority, or analogy would, in any such case, restrict the time within which the action should be brough, to less than six years ; and that limitation would be more than sufficient here.   This point discussed, with citation of following authorities : *Johnson v. Johnson*, 5 Ala. 90 ; *Ferguson v. Lowery*, 54 Ala. 510 ; *Malone v. Kelly*, Ib. 532 ; *Jackson v. Harris*, 66 Ala. 565 ; Code, § 3234 ; *Porter v Smith*, 65 Ala. 169 ; 2 Brick. Dig. p. 218, §§ 11, 15, 21 ; *Bradford v. Spyker*, 32 Ala. 134 ; *Tarleton v. Goldthwaite*, 23 Ala. 346 ; *James v. James*, 55 Ala, 530.

3.   But irrespective of the six years which, as we insist, must be allowed in any such case, and of the principle that, beyond that period, the additional time allowed would depend upon the particular facts of each case, and of the further rule that every party is, by statute (Code, § 3234), allowed one year after the discovery of a fraud, within which to bring his action, there are other principles of law applicable to this class of cases, which would be conclusive in the case at bar, namely : (1) That as such a contract is, by presumption and intendment of law, held to have been obtained by " undue influence," time is never counted against the injured party while that undue influence continues to exist.—*Thompson v. Lee*, 31 Ala. 306. (2) That, in such cases, time is not counted, nor delay attributed, except from the date of the discovery, by the injured party, of the fraud practiced upon him.

4.   The case of *Kern v. Burnham*, 28 Ala. 428, when properly understood, does not militate against these views, and is not in point to the case at bar.   That case distinguished.   But if it be supposed that the case is an authority against the appellee on the question of time, then it is certainly qualified, and, to that extent, overruled by the later and well considered case of *James v. James*, 55 Ala. 530, which settles that, in all such cases, where there is no actual fraud, and the question is merely one of time, the measure of time allowed is six years.

5.   The doctrine discussed by counsel for the appellants, touching affirmance or disaffirmance by infants, upon coming of age, of contracts made by them in infancy, where no fiduciary relation existed, is not pertinent to the case at bar. Here the infancy of the plaintiff, it is true, was a fact in aggravation of the fraud, but it was not the *basis* of the relief sought. If, like Mrs. Ferguson, in *Ferguson v. Lowery, supra,* he had

been twenty-four years old at the time of the settlement, he would be entitled to relief. So with the doctrine of frauds in contracts or conveyances, as between adults, in the absence of trust and confidence reposed. The doctrine, where *mere* infancy, or *mere* fraud is involved, is quite different from the doctrine of fraud, whether between adults, or an infant and an adult, *where there is a fiduciary relation*, and is governed by different rules and principles. These distinctions are sufficiently pointed out in *Malone v. Kelly*, 54 Ala. 538, 540. See also *Johnson v. Johnson*, 5 Ala. 96.

6. It is true, in a sense, that all persons are charged with knowledge of the law; and it is true that the appellee's disabilities of non-age were removed in 1876; but, in such cases, in considering whether there has been unreasonable delay, the question becomes one of *fact;* and the court is bound to see, from the record, that, as a matter of fact, the appellee did not know, and was not informed, that his title was worthless, until a short time before filing his bill.

7. The ward had no independent counsel or advice. Young and inexperienced, he needed care and advice. He relied upon his guardian and the guardian's attorneys. They were bound to place around him all proper care and providence.—14 Vesey, jr., p. 300. To this duty they were utterly false.

8. The offer in the bill as amended to do equity is sufficient. In such a case as this, the offer should not be limited and specific, but broad and comprehensive.—*Br. Bank of Mobile v. Strother*, 15 Ala. 61; *Martin v. Martin*, 35 Ala. 566; *Garner v. Leverett*, 32 Ala. 413; *Bailey v. Jordan*, *Ib.* 50; *Rogers v. Torbut*, 58 Ala. 525; *Eslava v. Crampton*, 61 Ala. 514.

9. The demurrer to the original bill was, in substance, confessed, and the bill amended by inserting the offer to do equity. The demurrer was never afterwards refiled; and there was not, in fact or in law, any demurrer to the bill as amended. The action of the court in overruling the demurrer in the final decree was unauthorized and superfluous, and the complainant can not be thereby prejudiced.

10. We have no objection to an accounting for rents, if such rents are to be credited on the guardianship debt; but if an independent accounting is sought, if it be contended that the rents should be treated as a separate and distinct fund, to be paid over to Henry E. Voltz, or to be reserved and made good out of the proceeds of property subjected to sale by the decree, then there are many valid and meritorious objections to that course. Though the rents and profits of the statutory separate estate can not be *subjected* to the payment of the husband's debts, he may himself use or dispose of them for that purpose, or any

[Voltz v. Voltz.]

purpose, subject only to the penalty of removal from his trusteeship for misfeasance or malfeasance. Here, the husband, by his warranty deed, in which the wife joined, applied and disposed of these rents. The trustee, with the consent of the *cestui que trust*, if that had been necessary, disposed of that part of the trust fund, as to which the statute conferred upon him plenary power of disposition. The necessary operation and effect of the deed was to pass and apply whatever the husband had the power to pass and apply.—*Chapman v. Abrahams*, 61 Ala. 108. The husband can not now revoke that application. He is estopped by his act and his deed. The wife can not do so. She has no right to, and no power or control over, the rents and profits. The application made was valid, and is irrevocable.—*Daffron v. Crump*, 69 Ala. 79; *Early v. Owens*, 68 Ala. 176; *Cook v. Meyer Bros.*, 73 Ala. 580. But if such right existed, and could be enforced in a direct proceeding, and after the husband's removal from his trusteeship, it can not be done, as between the parties, or under the pleadings and issues in this cause.

STONE, J.—The present bill was filed by the appellee, for the purpose of opening and remaking a settlement he made with Henry E. Voltz, his guardian. The terms of settlement were agreed on and reduced to writing and signed, when the ward was a little more than eighteen years old. A year afterwards the complainant, by chancery decree, was relieved of the disabilities of minority, and soon afterwards the agreement of the year before was consummated, and Henry E., the guardian, conveyed to James W., the ward, property, real and personal, in full discharge of the former's liability; and the latter executed a full acquittance and discharge of the former's indebtedness as guardian. The settlement was made out of court, but the ward's acquittance was filed in the probate court, and thereupon, without further account, a decree was entered, discharging the guardian from further liability. The complainant, James W., became twenty-one, February 25, 1878, two years and nine months after the agreement of settlement, and about one year and eight months after the execution of titles and release. James W., the ward, took possession immediately after the agreement of settlement was entered into, remained in possession, and was never heard to complain until shortly before this bill was filed, November 11, 1881. This was more than five years after the interchange of titles, and some three years and eight or nine months after James W. reached his majority. During all this time he retained the possession and use of the property he acquired in the settlement.

The property conveyed in payment was probably worth not

[Voltz v. Voltz.]

more than half the sum of the guardian's indebtedness at that time; and it is not controverted that if the said James W. had expressed his dissent in a reasonable time, the settlement and discharge would have been set aside.—*Bergen v. Udall*, 31 Barb. 9; *Ferguson v. Lowery,* 54 Ala. 510; *Baines v. Barnes*, 64 Ala. 375; *Holt v. Agnew*, 67 Ala. 360; *Humphreys v. Burleson*, 72 Ala. 1.

It is contended, however, that there has been too long acquiescence, and too many acts of ratification to allow the settlement to be now overhauled. So, the single inquiry is, has there, or has there not, been a ratification and too long acquiescence in this case, to allow the settlement to be opened.

Contracts of purchase, even of lands, made by infants, are not void. They are only voidable, at the infant's instance, and when the infant becomes of age, if he, with a knowledge of all the facts, ratifies the contract, he can not be heard to complain afterwards, unless he can show some fraud perpetrated upon him. And, if after attaining to his majority, such infant contractor, being cognizant of all the facts, deal with the property in a manner inconsistent with his right to rescind, or wait an unreasonable time before he asserts his right of rescission, either of these is a constructive ratification, and the contract will be upheld. This is the rule when the contract has been simply one between an adult and an infant, without any special relations of trust or confidence between them.

When, however, the contract has not only been between an adult and a minor, but, in addition, the parties sustained the relation to each other of trustee and *cestui que trust*, the courts exercise a narrower scrutiny of the transaction, and exact fuller and clearer proof of fairness before yielding their sanction of such transaction. And even if the relation of trustee and beneficiary has terminated, courts regard with distrust and *prima facie* disapprobation, all dealings in property, between them, until a sufficient time has elapsed for all presumption of undue influence to have ceased. And there are sound reasons for such a rule. The trustee stands as a guardian, protector, and, in many cases, the adviser of the *cestui que trust*. He must bestow the same care, diligence and watchfulness upon the personal and pecuniary interests confided to him, as an ordinarily prudent man bestows on his own similar interests. He is placed there, not in his own, but in another's interest. He is on watch, not of his own, but of another's property-rights. He should not, and can not rightfully strike a bargain with his beneficiary, which he would not advise and approve, if proposed by a stranger; and when he attempts to deal with his beneficiary, he is placed in the repugnant, dual attitude of being forced by duty to give his counsel, watchfulness, best

judgment and trading capacity to another, against his own personal, pecuniary interest, if antagonistic. In *Dunbar v. Tredennick*, 2 Ball & Beatty, 304, a case presenting the question we are considering, the Lord Chancellor said: Such transaction could not be upheld, "unless [the trustee] could satisfy the court that it was a transaction perfectly fair in all its parts, that it was such a dealing as he would have advised his employer to have entered into with a third person; and that he had given all the advice against himself, that he would against another."—*Huguenin v. Baseley*, 14 Ves. 273; s. c. Lead. Ca. in Eq., Vol. 2, Part 2, 556, and notes; *McCormick v. Malin*, 5 Blackf. 509; *Lee v. Lee*, 67 Ala. 406.

As we have said, the presumption of undue advantage is much more difficult to overcome, when the relation of trustee and *cestui que trust* has existed, than when it rests on the simple ground, that one of the contracting parties was an infant. So, the rule of evidence is much more exacting, when it is sought to show a ratification of such voidable contract. In *Thompson v. Lee*, 31 Ala. 292, quoting from *Dunbar v. Tredennick, supra*, it was said: "To give validity to such confirmation, it must be shown that the party was fully acquainted with his rights; that he knew the transaction to be impeachable which he was about to confirm; and that with this knowledge, and under no influence, he freely and spontaneously executed the deed." The same language in substance is employed in the following cases: *Murray v. Palmer*, 2 Sch. & Lef. 474; *Fish v. Miller*, 1 Hoffm. Ch. 267; *Butler v. Haskell*, 4 Desa. 651, 716; *McCants v. Bee*, 1 McCord's Ch. 383; *Boyd v. Hawkins*, 2 Dev. Eq. 195, 215. In *Cumberland Coal & Iron Co. v. Sherman*, 20 Md. 117, 134, is this language: "The *cestui que trust* must not only have been acquainted with the facts, but apprised of the law, how those facts will be dealt with, if brought before a court of equity." Of similar import is *Hoffman Steam Coal Co. v. Cumberland Coal & Iron Co.*, 16 Md. 456, 468; *Pairo v. Vickery*, 37 Md. 467.

In Pomeroy's recent and excellent treatise on Equity Jurisprudence is this language: "Where an ignorance or misapprehension of the law, even without any positive, incorrect, or misleading words or incidental acts, occurs in a transaction concerning the trust, between two parties holding close relations of trust and confidence, injuriously affecting the one who reposes the confidence, equity will, in general, relieve the one who has thus been injured. The relations of trustee and *cestui que trust*, guardian and ward, and the like, are examples. The relief is here based upon the close confidence reposed; upon the duty of the trustee to act in the most perfect good faith, to consult the interests of the beneficiary, not to mislead him, and

[Voltz v. Voltz.]

not even to suffer him to be misled, when such a result can be prevented by reasonable diligence and prudence."—Vol. 2, § 848.

It may seem to be going an extreme length, when it is asserted that to render a ratification binding in such case, the party to be affected must be "apprised of the law." It is difficult, however, to discriminate between "knowing a transaction to be impeachable," and being "apprised of the law," which alone determines when and how it is impeachable.

In the settlement made between Henry E. Voltz, the guardian, and James W. Voltz, the ward, the payment was made in personal property, in value probably less than one thousand dollars, and in a tract of two hundred acres of land. In fixing the value of the land, the witnesses vary from eighteen hundred to fifty-five hundred dollars. We feel we are in safe bounds, when we affirm that the lands, improved as they were, were not worth exceeding thirty-five hundred dollars. Aggregated, these sums are less than half the indebtedness, of which they were given and accepted as payment. The lands so conveyed were the statutory separate estate of Mrs. Voltz, the wife of Henry E. Voltz; but James W. Voltz knew that fact when he accepted the conveyance. It is contended for appellant that the conclusive presumption, that all men know the law, applies in this case, and that, therefore, it must be conclusively presumed that James W. Voltz knew, from the beginning, that the deed he obtained to the lands, being a conveyance of the wife's statutory separate estate in payment of her husband's debt, vested no title in him.—*Lee v. Tannenbaum*, 62 Ala. 501; *Prince v. Prince*, 67 Ala. 565.

The deed from Henry E. Voltz and wife to James W. Voltz, given in settlement in June, 1876, contains full covenants of warranty. It conveyed absolutely no title, for they were incapable of conveying a title, on such consideration. The consequence is, that the covenant was broken as soon as it was entered into. Henry E. Voltz having conveyed his property away, and being probably insolvent, it might present a grave question whether James W. Voltz is not entitled to relief, even if there were no question of infancy, or confidential relation in this cause. But we do not decide this question.

In all the stages of this case—the agreement to settle, the relief of the minor's disabilities, the execution of titles after they were relieved,—James W. Voltz was without independent legal counsel; and he was not advised by his guardian to consult such counsel. As matter of fact, he did not know his title to the land was bad, until a few days before he filed this bill. He had pledged his honor he would abide by the settlement, he had ratified it after he was relieved of the disabilities of minor-

[Voltz v. Voltz.]

ity, and we are forced to the conclusion he did not "know the transaction was impeachable," until so informed by counsel of his own selection. After this, there was no delay in asserting his rights. This is a complete answer to the objection of staleness, or undue delay, under all the authorities.—*Greenlees v. Greenlees*, 62 Ala. 330 ; *Jackson v. Harris*, 66 Ala. 565. In the matter of want of knowledge that the title acquired was worthless, this case appears to be distinguishable from *Kern v. Burnham*, 28 Ala. 428.

The bill, as originally framed, contained no offer to surrender up the deed to be cancelled, to account for the property received, or otherwise to do equity. On April 11th, 1882, there was a demurrer interposed, assigning this omission among other grounds. On the 27th October, 1882, the bill, by leave of the court, was amended, by adding to one of the sections the words, "And complainant hereby offers to do in the premises whatever the court shall direct." There was no demurrer filed to this. If there had been a demurrer to the bill as amended, it is scarcely sufficient.—*Br. Bank v. Strother*, 15 Ala. 54; *Rogers v. Torbut*, 58 Ala. 523 ; *Eslava v. Crampton*, 61 Ala. 507 ; *Security Loan Association v. Lake*, 69 Ala. 456 ; *Eureka Company v. Edwards*, 71 Ala. 248. But the defect was clearly amendable—did not go to the substantial merits of the case—and could be reached only by demurrer. *Hooper v. S. & M. R. R. Co.*, 69 Ala. 529 ; *Jones v. Latham*, 70 Ala. 164 ; 1 Brick. Dig. 778, § 63. This amendment, although, perhaps, too general for accurate pleading, was, nevertheless, an attempt to heal the defect objected to. Can the demurrer previously filed be visited on the amendment subsequently allowed ? To so hold, it would seem, would be to give to the demurrant a great advantage. By resting on his first demurrer, he would invoke no direct adjudication on the sufficiency of the amendment; and if it should turn out that the amendment did not completely obviate the objections raised by the demurrer, a reversal in this court would follow, attended by remandment, amendment in the court below, and a re-trial of the cause, after much delay and expense. We are speaking, of course, of defects in pleading, which do not go to the substantial equity of the bill, but are always amendable at any time before final decree. If the bill be substantially wanting in equity, different rules should prevail. On this question, it is not perceived that any difference should obtain in the practice in equity, and in common-law courts. In the latter, if there is an amendment after demurrer to the count or complaint, the sufficiency of the amended pleading is not raised, without a new demurrer, or a re-filing of the former one to the new state of the pleading, if deemed sufficiently specific. In other words;

.the demurrant must show by the record that he has formally invoked the judgment of the court upon the sufficiency of the amendment—whether it has corrected the defect pointed out and relied on by the original demurrer. There is nothing in this record which shows this course has been pursued. There is neither hardship nor inconvenience in requiring this practice to be pursued. See *Moore v. Armstrong*, 9 Por. 697; 1 Dan. Ch. Pr. (5th Ed.) 582.

In *Gaillard v. Duke*, 57 Ala. 619, there was a contestation whether the administrator, who was one of the distributees, had received money, and how much, by way of advancement. There was demurrer to the allegations, assigning several grounds—one objection being, that they were not sworn to. The court sustained the demurrer as to the *other objections*, but overruled it as to the want of affidavit. Amended allegations were then filed, conforming to the rulings on demurrer, but without affidavit. There was no new demurrer to the amended allegations. This court said : " If it was the purpose of the appellant to insist that the amended allegations were defective because not sworn to, he should have demurred to them also for that reason. The contention can not be made upon the former pleading, which has become *functus officio*."

After the present suit was commenced, an attempt was made to heal the imperfection in the title made by Henry E. Voltz and wife. A chancery decree was obtained, relieving her of the disabilities of coverture, under section 2731 of the Code of 1876. The petition for the purpose failed to aver that she owned any separate estate, and hence, failed to show jurisdiction in the court.— *Cohen v. Wollner, Hirschberg & Co.*, 72 Ala. 233. Her later deed tendered was imperfect and inoperative, like the first.

It is contended for appellant that, when the deed from Henry E. Voltz and wife was executed to James W. Voltz, the former verbally agreed with his wife to convey to her another place, called the River place instead of the Chestnut place—the place in controversy—and that, carrying out that agreement, he did convey to her the said River place, before this bill was filed. It is further contended that the River place is of greater value than the Chesnut place ; and the exchange being beneficial to the wife, chancery would approve it, and confirm the trade.

Conceding this to be true, it must and will be conceded that, as matters now stand, James W. Voltz has not a good title ; and he is not bound to accept that which requires litigation with its delay, expense and uncertainties, to secure to him an indefeasible title.— *Walton v. Bonham*, 24 Ala. 513. Besides, the conveyance of the River place, made as it was just before this suit was brought, derives no strength or support from the

oral promise previously given.—*Hubbard v. Allen*, 59 Ala. 283. Much difficulty and uncertainty might arise, if the conveyance of the River place should be assailed, as being in excess of what Henry E. Voltz owed his wife. There is not enough in this record to make it absolutely certain that James W. Voltz can acquire a perfectly good title to the Chesnut place, even at the end of a suit.

Other questions have been urged on our consideration. By the decree of the chancellor, the settlement of Henry E. Voltz with his ward, James W. Voltz, agreed upon in May, 1875, and consummated by conveyance of the land made in 1876 by Henry E. Voltz and wife, and the release and acquittance executed by James W. Voltz, were " set aside, vacated and annulled." The decree, however, did not require James W. Voltz to surrender back the possession of the lands, nor to deliver up the deed to be cancelled. It is contended the decree was erroneous, because it failed to make this further order.

It is further objected that, in giving instructions to the register, the chancellor did not go far enough. On the 23rd February, 1873, Henry E. Voltz had made an annual settlement with his ward, by which there was ascertained and decreed to be due the latter the sum of $9473.76. The register was instructed, in stating the account against the guardian, to charge him with this decreed sum, and interest thereon ; and to allow him as credits such amounts as might be shown to have been properly expended for the ward, between the time that annual settlement was made, and the settlement agreed on between Henry E. and James W. Voltz. It is not controverted that the settlement of February 23rd, 1873, is *prima facie* correct, and stands as an adjudication between the parties, unless contested according to the statute.—Code of 1876, §§ 2531, 2594. The objection is, that, in giving this direction, the chancellor failed to provide for the re-examination of any item included in previous settlements.

It is further objected that, in giving instructions to the register in the matter of taking the account, the chancellor omitted to charge James W. Voltz with rents of the lands while in his possession.

Notwithstanding the decree in this cause did not finally determine all the details of relief, it was nevertheless a final decree, in that sense which will support an appeal. " The test of a final decree, so as to support an appeal, is not whether the cause is still in progress in the court of chancery, awaiting further proceedings which may be necessary to entitle the parties to the full possession and enjoyment of the rights it has been declared they have, but whether a decree has been rendered, settling these rights."—*Jones v. Wilson*, 54 Ala. 50, and author-

ities cited. A decree may be partly final, and partly interlocutory.—*Malone v. Marriott*, 64 Ala. 486. And we may add, it is rarely the case that a chancery decree, even though final in its character so as to support an appeal, settles all the questions necessary to render complete relief. This is almost universally so, when the bill is one for redemption; or, for any other cause, an account has to be taken before the final orders can be made. As was said in *Cochran v. Miller*, 74 Ala. 50, "If it [the decree] settle all the equities between the parties, it is, to that extent, final. If it is necessary to take an account, or other proceeding must be had to carry it into effect, to this last named extent it is interlocutory, and may be moulded, modified or altered by the chancellor, as any other interlocutory decree may be. The principles of relief can not be altered, for they are final. Directions for carrying the decree into effect may be altered, for they are interlocutory." The decree rendered was final, and justified the appeal taken. If it had not been final, the appeal would not have lain. It settled and declared that the settlement between Henry E. and James W. Voltz, agreed on in May, 1875, and consummated in June, 1876, "be set aside, vacated and annulled," and that another and final settlement be made between the guardian and ward. We say this settled the equities, because all else was mere details in settling the account, and carrying the decree into effect. As to such details, if the chancellor gave directions which were not full enough, or even erroneous, these being interlocutory, he could afterwards modify them on motion of either party. If some orders necessary to a full and complete execution of the decree were omitted, he could supply them afterwards.—*Cochran v. Miller, supra.*

Applying these principles to this case. It is necessary to a complete determination of this cause, that the deed from Henry E. Voltz and wife to James W. Voltz be surrendered up and cancelled, under the direction of the court, and that the possession of the premises be surrendered back to the grantors. It is not necessary, however, that this order should have been made in the first instance. The condition of crops planted and growing should be taken into the account, and the final order should be made, when it can be done with as little damage to the parties as possible.—Code of 1876, §§ 2949, 2950. The chancellor has much better means of determining this question advisedly than we can have. This pertains to the execution of the decree, and not to the equity of the bill.

So, in the matter of taking the account. If either party desires to go behind the decree of 1873 on partial settlement, this is a question of fuller instructions to the register, which either party is entitled to, on petition or motion therefor. And James

[Voltz v. Voltz.]

W. Voltz is liable for rents of the land while in his possession, with interest from the end of each year, subject to discount for taxes paid, and for permanent improvements, if any remain which were placed there by him.—Code of 1876, §§ 2951 *et seq.*. But this fund being income and profit of Mrs. Voltz' statutory separate estate, a difficulty arises in the matter of its administration. The statute declares that all the property of the wife is her separate estate, not subject to the payment·of the debts of the husband ; that it vests in the husband as her trustee, who has the right to manage and control the same, and is not required to account with the wife, her heirs or legal representatives, for the rents, income and profits thereof ; but such rents, income and profits are not subject to the payment of the debts of the husband.—Code of 1876, §§ 2705–6.

We have many times had occasion to consider the power of the husband over the wife's property, and its income and profits. In *Lee v. Tannenbaum,* 62 Ala. 501, we said : " The right and title to property thus situated is secured to the wife, yet without power in her to charge it, save to a limited extent ; that the husband has neither right nor title to the property, yet, as trustee, may manage and control it, and invest its proceeds, when in money, or converted into money ; that the rents, income and profits pass to him as trustee, but there is no mode provided for making him account for them ; and yet they are not liable to his debts. True, the rents, income and profits are committed to him in confidence that he will employ them in support and maintenance of the family ; but this is only a moral or imperfect duty. Its performance can not be compelled, though he might be removed from the trust for a clear disregard of this obligation." The law can not coerce the payment of the husband's debts, either out of the *corpus,* or the income and profits of the wife's statutory estate, save to the extent, and in the manner provided in section 2711 of the Code. Yet, if the husband dispose of the wife's property illegally, and she sue to recover it back, she can not recover the income and profits, because her husband is entitled to the possession and administration of them ; and he, by disposing of the property, has parted with all the possessory right and interest he had, and estopped himself from recovering back that which he bargained away.— *Whitman v. Abernathy,* 33 Ala. 160 ; *Ryall v. Prince,* 71 Ala. 66 ; *Chapman v. Abrahams,* 61 Ala. 108.

According to the principles above declared, neither Henry E. Voltz nor his wife can recover the rents, by any active measure of relief. He is estopped, because, having parted with the land in payment of a debt standing against him, and by a conveyance binding on him, he can not be heard to say James

[Bland v. The State.]

W.'s possession was tortious·or illegal. Nor can the wife recover, because her only authority would arise as an incident to the recovery of the land itself; and then, the recovery, so far as rents and profits are concerned, would be for the use of her husband, as her trustee. He having estopped himself, she can not recover in his right.— *Whitman v. Abernathy, supra; Daffron v. Crump,* 69 Ala. 77.

The rents·in the present case must be treated as if they had been realized, and then paid by Henry E. Voltz, to James W. in part liquidation of the indebtedness of the former. It is a good payment *pro tanto ;* it can not be recovered back from him, and he must be charged with it in the account. From the sum of these must be deducted any taxes he may have paid, and the present value of any valuable, permanent improvements he may have put on the land.

None of these questions enter into the final decree proper. They pertain to the execution of the reference, and are interlocutory in their character. They can not become the subject of assigned error, until the account is taken, and finally decreed on. Neither of the three objections urged is now in a condition to be the ground of a reversal.— *Cochran v. Miller, supra.*

The decree of the chancellor is affirmed.

BRICKELL, C. J., dissenting.