# Wimberly *v.* Mayberry & Co.

*Bill in Equity to enforce Statutory Lien of Mechanics and Material-men.*

1. *Statutory lien of mechanics and material-men, as against prior mortgagee, and how enforced* —Under the statute giving a lien to mechanics and material-men, for work done and materials furnished in erecting or repairing a building or improvement on land (Code, §§ 3018–19), the majority of the court holds, (1) that when the work is done or the materials are furnished in the completion of an unfinished house on land subject to a prior mortgage, the statutory lien extends to the entire property, and has priority over the lien of the mortgage, but only to the extent of the enhanced value imparted to the property, while it is subordinate to the mortgage lien on the property as it existed before the statutory lien attached ; (2) that a court of equity has jurisdiction to enforce this lien, and to adjust the respective rights and priorities of the parties, by selling the property and apportioning the proceeds of sale, or by renting out the property, or by other decree appropriate to the circumstances of the particular case. (STONE, C. J., and CLOPTON, J., *dissenting,* held (1) that the statutory lien was subordinate to the lien of the mortgage, and bound only the mortgagor's equity of redemption in the property ; (2) that the only remedy of the statutory lienor was to redeem from the mortgagee, or to await the foreclosure of the mortgage and claim the surplus proceeds of sale.)

APPEAL from the City Court of Birmingham, in equity.

Heard before the Hon. WM. W. WILKERSON.

The facts are fully stated in the opinions of COLEMAN, J., and STONE, C. J., and no further statement is necessary.

GARRETT & UNDERWOOD, for appellant.—Wimberly's mortgage, which was prior in date and duly recorded, gave him priority of lien and right over any statutory lien which may have afterwards supervened, both on the land itself, and on the unfinished house as it stood before any additional work or material was expended on it; and any statutory lien afterwards acquired must be subordinate to this prior and paramount lien. This proposition is rested on a consideration of (1) the rights, interests and remedies of the parties to a mortgage, as between themselves, and as against third persons; (2) the words of the statute giving a lien to mechanics and material-men, and the construction placed upon it; and (3) the constitutional provisions as to impairing the obligation of contracts, or interfering with vested rights of property. (1.) The

[Wimberly v. Mayberry & Co.]

decisions of this court have established, as a rule of property, that a mortgage is more than a mere security for a debt, or a mere chattel interest; that it conveys the fee simple to the mortgagee, though subject to a condition, and the right of immediate possession, in the absence of an express provision to the contrary; that nothing is left in the mortgagor but an equity of redemption, which is subject to levy and sale under execution at law, and a statutory right of redemption after foreclosure; that the mortgagee is a purchaser for value, and entitled to protection as such, when he parts with present value, or incurs an obligation to do so *in futuro*, as the consideration of his mortgage; and that the due registration of the mortgage operates as constructive notice to all subsequent purchasers, or persons claiming through or under the mortgagor.—*Coffey v. Hunt*, 75 Ala. 238; *Farris & McCurdy v. Houston*, 74 Ala. 169; *Slaughter v. Swift, Murphy & Co.*, 67 Ala. 499; *Toomer v. Randolph*, 60 Ala. 360; *Welsh v. Phillips*, 54 Ala. 309; *Rogers v. Adams*, 66 Ala. 602; *Coleman v. Smith*, 55 Ala. 369; *Davis v. Mulligan*, 88 Ala. 526. (2.) The lien of a mechanic or material-man is purely statutory, and its character, operation and extent are to be ascertained by consideration of the terms of the statute creating it, which also prescribes the remedy for its enforcement. By the terms of the statute, the lien is limited to the estate, title or interest of the party contracting for the work or materials—in this case, the mortgagor—and the courts can not by construction extend the lien or the remedy.—*Copeland v. Kehoe & Ramsey*, 67 Ala. 597; *Wadsworth v. Hodges*, 88 Ala. 505, citing Jones on Liens, § 1206; *Welsh v. Porter*, 63 Ala. 232; *Porter v. Miles*, 67 Ala. 172. (3.) Any other construction of the statute would make it unconstitutional—would impair the obligation of the contract evidenced by the mortgage, take away vested rights, and deprive the mortgagee of his property without due process of law.—*Cole v. LaGrange*, 113 U. S. 1; *Wilkinson v. Leland*, 2 Peters; *Sadler v. Langham*, 34 Ala. 311; *Brown v. Morrison*, 3 Ark. 217; Phil. Mech. Liens, §§ 225, 217; *Railroad Co. v. Hamilton*, 134 U. S. 296; 7 Cal. 575; 3 Snead, Tenn. 125.

CABANISS & WEAKLEY, *contra.*—(1.) By express provision of the statute, the lien of a mechanic or material-man may be enforced in equity without alleging or proving any special ground of equitable jurisdiction.—Code, § 3048. This section changes the law as ruled in *Chandler v. Hanna*, 73 Ala. 390; *Walker v. Dainwood*, 80 Ala. 245. In a case like the present, when priorities are to be declared, and conflicting in-

[Wimberly v. Mayberry & Co.]

terests protected, the procedure and remedies of the Chancery Court are peculiarly appropriate. (2.) The repealing statute approved February 12th, 1891, can not affect the rights of complainants based on the repealed sections. The constitutional inhibition against impairing the obligation of contracts keeps the former statutes in force, for the purpose of maintaining both the right and the remedy as to existing causes of action.—*Jordan v. Smith*, 83 Ala. 299; *Ernst v. Hollis*, 89 Ala. 638; *Weaver v. Sells*, 10 Kans. 619; 11 Abb. Pr., N. S. 326; 36 Mo. 610; *Warren v. Woodward*, 70 N. C. 382; 48 Iowa, 36; *In re Mining Co.*, 1 Sawyer, 710. (3.) Existing laws enter into a contract, as if expressly embodied in it as a part thereof; and Wimberly can not complain that the statutes in force when he took his mortgage impair the obligation of his contract.—*Edwards v. Williamson*, 70 Ala. 145; *Newark Lime Co. v. Morrison*, 13 N. J. Eq. 133; *Stockwell v. Carpenter*, 27 Iowa, 119; Phil. Mech. Liens, § 30; 79 Ky. 190; 2 Jones on Liens, § 1462. (4.) The statute giving to such lien-holders priority of right, as to a building or improvement, over a pre-existing mortgage, is a valid exercise of legislative power. *Brooks v. Railway Co.*, 101 U. S. 443; *Newark Lime Co. v. Morrison*, 13 N. J. Eq. 133; *McLaughlin v. Green*, 48 Miss. 175; *Ivey v. White*, 50 Miss. 146; *McAllister v. Clopton*, 31 Miss. 257; *Atley v. Haviland*, 36 Miss. 19; *Stockwell v. Carpenter*, 27 Iowa, 119; *Bradley v. Simpson*, 93 Ill. 93; *Crandall v. Cooper*, 62 Mo. 478; 16 Mo. App. 454; *Welsh v. Porter*, 63 Ala. 225; *Robbins v. Turner*, 78 Ala. 592; Phil. Mech. Liens, § 238. (5.) Where the lien exists for materials used in completing an unfinished building, it covers the entire building.—Code, §§ 3018–19; *Eq. L. Insurance Co. v. Slye*, 45 Iowa, 615. (6.) When a lien attaches to a building prior to a mortgage, foreclosure of the mortgage does not affect the lien.—*Hall v. Manufac. Co.*, 22 Mo. App. 33; 15 Ill. 190. (7.) Wimberly permitted Mulford to build with the insurance money, and did not limit him as to the cost; and he is estopped from denying the priority of the liens created in thus rebuilding.—46 N. W. Rep. 1123; *Millsap v. Ball*, 46 N. W. Rep. 1125; *Hill v. Gill*, 42 N. W. Rep. 294; *Henderson v. Connelly*, 123 Ill. 88.

COLEMAN, J.—The agreed facts, as we construe them, are substantially as follows: On the 26th day of October, 1889, one R. M. Mulford, being then the owner in fee of a lot and dwelling and other improvements thereon in the city of Birmingham, obtained a loan of four thousand dollars from T. P. Wimberly, and secured the same by a mortgage of the lot,

[Wimberly v. Mayberry & Co.]

dwelling and improvements; and, as a further security, the mortgage provided that the dwelling should be insured for the benefit of the mortgagee. The mortgage was regularly acknowledged and recorded. Before the 2d day of June, 1890, the dwelling was partly destroyed by fire, and from the policy of insurance twenty-six hundred and sixty-four dollars was realized. By agreement between Wimberly, the mortgagee, and Mulford, the mortgagor, Mulford was permitted to use the insurance money in rebuilding his dwelling; it being expressly agreed that the new building should stand in the place of the burned dwelling, and be subject to the mortgage in the same manner. Mulford expended the insurance money without completing the dwelling, and without the consent or knowledge of his mortgagee incurred the indebtedness sued upon, for its completion. Complainants, Mayberry & Co., whose claims aggregate about six hundred dollars, filed this bill to enforce a lien for materials furnished for the completion of the building. The City Court granted relief to the complainants, holding that their lien for materials extended to the entire building, and was superior and prior to that of the mortgage. The decree of the court is assigned as error.

Section 3018 of the Code declares, that every mechanic, or other person, who shall do or perform any work or labor upon, or furnish any material, fixtures, . . . for any building or improvements upon land, or for repairing the same, . . . shall have a lien therefor on such building or improvement, and on the land on which the same is situated, to the extent in ownership of all the right, title and interest owned therein by such owner or proprietor," &c. The lien for repairs, by this section, is as extensive as that given for material or fixtures furnished for the building or improvement. Section 3019 of the Code, fixing the priority of liens, declares, "Such lien as to the land shall have priority over all other liens, mortgages, or incumbrances, created subsequently to the commencement of the work on the building or improvement, or repairs thereto; and as to the building or improvement, it shall have priority over all other liens, mortgages, or incumbrances, whether existing at the time of the commencement of such work or subsequently created." The terms "building or improvement," as here used, are not necessarily synonymous, and have a different signification from "repairs thereto," although repairs ordinarily may be an improvement. The term "building" refers to an independent erection upon the land. An improvement may be an independent structure or addition, and it may be an addition to, or mere betterment of a building or improvement already made and not included in "repairs thereto."

The statute contemplates different conditions of the realty at the time of the commencement of work by the mechanic, or when the materials are furnished, or repairs thereto are made. *First*, when there is no lien or incumbrance upon the land at the time the building or improvement or repairs are commenced. *Second*, when there is a lien upon the land, and other and independent buildings or improvements are subsequently commenced.. *Third*, when there is a lien upon the land and building or improvements thereon, and further improvements or repairs are subsequently commenced. The word "land," as used in sections 3018 and 3019. has its common-law meaning, and includes all buildings or improvements on the land at the time of the commencement of the work, or when materials are furnished.

Under the first condition, by virtue of section 3018 of the Code, a lien is given upon the building or improvement and land, not only for the work done and materials furnished, but for repairs made; and by section 3019 of the Code, this lien has preference over all subsequent liens or mortgages. The lien may be enforced, if necessary, by a sale of the entire property.

Under the second condition, for the erection of an independent building or improvement, a mechanic's or materialman's lien is given upon the building or improvement, which is declared to be superior to any existing lien upon the land. The statute provides that this lien may be enforced by a sale of the building or improvement, and, if necessary, the purchaser has authority to remove it from the land.

The other condition is when there is a lien for an improvement, which is a mere betterment of a building or improvement, or when there is a lien for "repairs thereto," upon which there is an existing mortgage or lien, before or at the time the improvements or repairs are commenced. The statute as clearly declares the lien for an improvement which is a mere addition or betterment of a building or improvement, or for repairs thereto, as it does upon a building or improvement wholly erected; and it is the duty of the courts to protect and enforce the lien as far as it can be done legally, and without interfering with vested interests, or impairing the obligation of contracts.

To determine the respective rights of the holders of the different liens in the cases last enumerated, is the question presented by the record for adjudication. Section 3019, *supra*, fixing the priority of the liens, uses the term "such lien." The lien given to which the words "such lien" refer, and its extent, is declared and defined in the previous section 3018, in

[Wimberly v. Mayberry & Co.]

the following words, "shall have a lien therefor on such build-ing or improvement, and on the land on which the same is situated, *to the extent in ownership* of all the right, title and interest owned therein by such owner or proprietor." The italics are ours. "Such lien," the priority of which is fixed, and provision for its enforcement made in section 3019, is limited by section 3018 to the right, title and interest of the owner or proprietor in the "building or improvement, and the land on which the same is situated." This must necessarily be correct; otherwise, the owner of a life-estate in a block of buildings, by contract for improvements or repairs, might have all the buildings sold and removed from the premises, to the entire destruction of the property of the remainder-man; or, a vendor, who retains the vendor's lien, might be improved out of his security, without fault or neglect on his part. Un-der this view, the question arises, what operation will be given to that part of section 3019 which provides, "as to the build-ing or improvement it shall have priority over all other liens," &c. The lien can have no force beyond its extent, and its extent is upon the whole building or improvement, except as declared and limited by section 3018. There are many condi-tions in which the lien can be enforced by a sale of the build-ings and improvements, as provided in the statutes, and without injury to any creditor, or owner of the land or remain-der interest.

To have a proper understanding of the statute, the two sec-tions must be construed together, and with reference to the existing law intended to be changed, and the protection to mechanics and material-men intended by the statute. At common law, a mortgage or lien upon land carried with it not only the buildings or improvements erected thereon at the time, but all subsequent buildings, improvements or repairs thereto, merged into the realty, and became subject to the mortgage; and this is the law now, except so far as changed by statute, or agreement of parties. The lien of mechanics or material-men is purely statutory, and its operation and extent is defined and limited by statute.—*Copeland v. Kehoe,* 67 Ala. 597.

There was no injustice or injury in giving to mechanics and material-men *a prior* lien upon buildings or improvements wholly erected by them, against existing mortgages or liens, or in declaring a prior lien upon the land, as against the mort-gages and liens subsequently obtained. As against a prior mortgage or incumbrance of the land, the equity and policy of the statute which secures the mechanic's and material-man's lien, rest upon the principle, that no injustice is done in pre-

venting the holder of the older lien from appropriating the labor and material of others, by which his security is enhanced, without compensation. It would be inequitable to hold that a mechanic or material-man can appropriate, as compensation for his labor and material, the estate of an innocent prior mortgagee ; or, as was forcibly stated in *Welch v. Porter*, 63 Ala. 232, "to hold that a subsequent contractor or material-man could acquire a lien, which would take precedence over an intervening incumbrance, . . . would shock the moral sense of the profession, and fail to carry out the intention of the legislature."

The purpose of the act was to intervene in favor of the mechanic or material-man, and secure to him a paramount lien upon what he put upon the land in the way of "buildings or improvements, or repairs thereto," and prevent the operation of the common law, which, without the act, would give an existing mortgage or lien a priority over it. The property as improved in value, in such cases, merges into the realty, but subject to the mechanic's lien to the extent of the value of the improvement. It was to protect those by whose labor and materials the value of the property was increased, as far as possible, to the extent of the enhanced value of the property. When a building or improvement, as an entirety, is placed upon, or added to land under mortgage, such building or improvement may be sold and removed without affecting the mortgage security. Where the improvement is a mere betterment, or where repairs are made upon a building or improvement upon which there is a valid lien, and the owner has only a qualified right, it would be unjust and inequitable in many cases, and against the plain provision of section 3018, to enforce the lien and give it priority on the entire building or improvement. It would be appropriating one man's property to pay the debts of another, without his knowledge and consent.

The statute of Iowa, in regard to mechanics' liens, is very similar to the statute of this State. See Revised Code of Iowa, §§ 1846, 1855. In the case of *Getchell v. Allen*, 34 Iowa, 559, it was held, a mechanic's lien for work or material furnished in making additions or repairs to a building is not entitled to preference as against the entire building, over a prior mortgage on the premises ; that the word "improvement," as used in the statute, did not apply to an addition or betterment of a building, but to some independent structure on the land. This ruling was afterwards affirmed in *Neilson v. Iowa R. R. Co.*, 44 Iowa, 77. In the case of *Equitable Life Ins. Co. v. Slye*, 45 Iowa, 615, it was held, that a me-

[Wimberly v. Mayberry & Co.]

chanic's lien for materials furnished for the improvement or
enlargement of a building does not take priority over an ex-
isting mortgage, and this rule prevails even though the build-
ing be changed, so that very little of the original structure
remains.

The Iowa courts have not given to the word "improvement"
the same extensive definition as that given to it by this court.
We do not see that the difficulty of construing and applying
the statute is in any way relieved by confining "improvement"
to independent structures or erections. The Iowa statute pro-
vides a lien for "repairs" to the same extent as our statute,
and the lien given for repairs, like ours, is the same as that
for "building or improvement."

The Missouri statute is also substantially the same as that
of this State. In the case of *Crandall v. Cooper*, 62 Mo. 478,
the facts were, that Cooper, a mortgagor, contracted for im-
provements in putting up a fence on the mortgaged premises.
The question arose as to the priority of the mortgage lien, and
the mechanic's lien. The court held, the mechanic acquired
no greater interest in the realty than Cooper, the mortgagor,
possessed, viz., the equity of redemption, or a right to the
premises after the trust lien was paid off. The court further
held, that the mechanic might have enforced his lien upon the
fence, and recovered it. The case is cited to show that the
mechanic's lien is limited to the extent of ownership of the
owner of the land as against a prior mortgage. In the case of
*Haeussler v. Thomas*, 4 Mo. App., the same question was
directly involved. The different sections of the Missouri
statute are set out in the opinion, and we find no material
difference in the statutes quoted from that of this State. The
second section of the Missouri statute, as section 3018 of the
Code of Alabama, limits the mechanic's lien "to the extent,
and only to the extent of all the right, title and interest owned
therein by the owner or proprietor of such building, erection
or improvement," &c. The third section of the Missouri
statute declares, that "the lien for the things aforesaid, or
work, shall attach to the buildings, erections, or improve-
ments, for which they were furnished, or the work was done,
in preference to any prior lien upon the land upon which said
buildings, erections, or improvements have been erected or
put," &c. The statute goes on to prescribe for the sale and
removal of the buildings or improvements, in the same lan-
guage as that used by our statute. The court held that the
two sections must be construed together, and that the second
section could not be set at naught in construing the third sec-
tion giving priority to the lien, and to hold otherwise would

impair. the obligation of a contract. The conclusion of the court is, that the third section does not give.a mechanic a lien for repairs upon an existing building, to the prejudice of rights previously acquired by a mortgagee, though it does give him a lien upon a building erected by him subsequent to the mortgage. We approve of the conclusion of the court as we have stated that conclusion above. The same general principle is recognized in the case of *Steininger v. Raeman*, 28 Mo. App. 594.

The Supreme Court of Minnesota, in the case of *Meyer v. Berlandi*, and *Bahn Manufacturing Co. v. Jameson*, Lawyer's Am. Rep. vol. 1, p. 777, held that the statute of the State, in so far as it assumes to give a mechanic's lien precedence over prior incumbrauces, to be unconstitutional and void. The reasoning of the court in this opinion is to the effect, that such an act impairs the obligation of contracts, and divests settled rights of property.

The view we take of our statute, as applied to the facts of this case, does not require a decision of this question, as we are of opinion that the lien may be enforced without divesting vested rights, or impairing the obligation of a contract. We hold the meaning and intention of our statute is to give the anterior incumbrance priority upon what it embraced when the mechanic's lien commenced, and the mechanic's or material-man's lien for "repairs thereto" priority over what is added, either as a building or improvement or repairs. It would be in violation of the plain language of the statute to permit a mortgagee to appropriate to the payment of his debt, not only the property covered by his mortgage, and upon which he relied as security, but also the additional security furnished by the mechanic or material-man; and it would be inequitable and contrary to law to apply the mortgagee's prior security to the payment of the mechanic's or material-man's claim. The rights of both may be adjusted and preserved in a court of equity.

This conclusion is entirely consistent. with the case of *Turner v. Robbins*, 78 Ala. 592. The facts in that case show that the mortgage was upon a naked lot, and the mechanic's lien was given a preference upon a building subsequently erected. The same principle applied in the case of *Stockwell v. Carpenter*, 27 Iowa, to which we have been referred. There the vendor's lien was upon a naked lot, and the buildings afterwards erected.

Cases will arise under our construction which involve difficulty in the adjustment of the equities of the parties, and enforcing their respective priorities; but the statute is plain in

[Wimberly v. Mayberry & Co.]

declaring the lien for materials and repairs, and fixing its priority. The statute is not unconstitutional, as we construe it, and should be enforced in all cases where it can be done within constitutional limits. The statute makes no provision for adjusting priorities of liens in courts of common law, and the power of a court of law, without additional legislation, is not sufficient in all cases. If the building or improvement is a separate, independent erection or structure, it may be sold under execution from a court of law, and removed. If the mechanic's lien be for a mere betterment of a building or improvement, or for repairs thereto, upon which there is an existing mortgage, the priority of the lien can not be adjusted and protected in a court of law.

A purchase at a mortgage sale, foreclosed by a power contained in the mortgage, would not destroy the mechanic's lien, further than as to his right to redeem. Any other lien the statute gives him, would continue and follow the property. There is no doubt but that the mortgagee may also redeem the property from under the mechanic's lien which is prior to his lien.

The mortgagee's lien is superior and prior as to the property covered by the mortgage before the mechanic's or material-man's lien attached, and subordinate to the lien given to the mechanic or material-man, for what he added; and so the lien of the mechanic or material-man is upon the whole property, but subordinate to the mortgage as to the property covered by the mortgage when his lien attached. This is the condition of the property and the relative rights of both as fixed by statute, and the only question is as to the power of a court of equity to preserve, adjust and enforce the respective rights of all.

When the jurisdiction of a court of equity is invoked, all parties in interest may be made parties, and the court, by reason of its elastic power, has authority to so frame its orders and decrees as to ascertain, adjust and protect every interest and priority. In adjusting the equities between a prior *bona fide* mortgagee of the land as we have defined "land," and the holder of a mechanic's or material-man's lien for betterment of or repairs to a building or improvement, the court is not bound by the contract between a contractor, or the owner of the land, and the mechanic or material-man. As between the latter, judgment will be rendered according to contract; but as to the mortgage this contract is *res inter alios acta*. It is clear, under general principles, the mortgagee, by paying the mechanic's lien, could subject the whole property to his

lien; and there is no reason why the mechanic or material-man could not redeem the property from under the mortgage, so as to subject the entire property to his claim.

Under the rule declared, to adjust the equities of the mortgagee and mechanic or material-man, the court should order a reference, to ascertain the value of the building or improvement without estimating the increased value added by the improvements or repairs which is subject to the prior lien of the mechanic or material-man, and also its value including that added by the material or repairs. If the proof shows the value has not been enhanced by the material furnished, or repairs made, the material-man or mechanic gets nothing as against the prior mortgagee. On the other hand, if the proof shows that without the improvements or repairs the property would not be so valuable as with them, the mechanic's or material-man's lien has priority on the increased value; and in proportion as the building or improvement is increased in value by the material furnished or repairs made, the rule is furnished for declaring the relative rights and interest of the parties in the building or improvement. If the building or improvements are sold by the decree of the court, the proceeds can be easily adjusted.

As stated before, the power of the Chancery Court is not limited to a sale of the property. In some cases, as where the mechanic's claim was due, and the property was covered by a mortgage of prior date, but which did not mature until some time in the future, or when the owner had only a life estate in the building, it might be more equitable, and necessary in order to protect the interests of all parties, to adopt the rule laid down in *Hoot v. Sorrell*, 11 Ala. 386, and rent out the property. The refusal of a mortgagee to foreclose his mortgage can not operate to defeat the power of a court of equity to take care of the prior lien of a mechanic or material-man. The form of the decree enforcing the liens will depend more or less upon the proof, as to the particular estate of the owner, the condition of the property, and the character of the conflicting liens. All these must be considered, and perhaps cases will arise into which other considerations will enter. *Ware v. Hamilton Brown Shoe Co.*, 92 Ala. 145; 9 So. Rep. 136.

Where the mortgage has been legally foreclosed by a power of sale contained in the mortgage, it would seem the better time for fixing the respective valuations would be at the date of the foreclosure. Ordinarily, when there has been no foreclosure, it would seem the better time would be when the

[Wimberly v. Mayberry & Co.]

reference is ordered by the court. But we lay down no inflexible rule on this point, as we can not anticipate circumstances.

A mortgagor in possession before foreclosure is an owner, or proprietor, within the meaning of the statute, and authorized to contract for building or improvements or repairs.

The description of the property in the bill of complaint is a substantial compliance with the statute. The demurrer to the bill was properly overruled.

The cause is reversed and remanded, that the trial court may proceed in accordance with the principles of law herein declared.

Nothing in this opinion is to be construed as having reference to the statute as amended by the act of 1890–91, page 578. The rights herein involved had vested before the passage of that amendatory act.

Reversed and remanded.

Since the foregoing opinion was prepared, Chief-Justice STONE has written a dissenting opinion, and we do not deem it improper to notice the argument adduced by him, for holding to a contrary opinion.

If the learned Chief-Justice, in his able dissenting opinion, had explained how it is that the lien for a building wholly erected upon land under a mortgage is prior and superior to the mortgage, and the lien for an improvement or "repairs thereto" is secondary and subordinate to the mortgage, his conclusion would be much more satisfactory. The statute which declares and fixes the priority of the former is that which declares and fixes the priority of the latter, and the statute makes no distinction as to the extent and priority of either. The lien for either stands upon the same footing, and both liens are of equal dignity and entitled to the same priority as to existing mortgages. The authority for holding that one is senior and superior to the mortgage, and the other junior and subordinate to the mortgage, and as attaching only to the equity of redemption of the mortgagor, we submit can not be found in the statute itself. That this is true is clearly manifest from the statute, and from its extent and operation upon the property of the owner, when there are no intervening incumbrances. In such case, the lien for repairs may be enforced against the whole building and the land. It is the qualified interest of the owner, or the prior incumbrance, which limits the priority of the mechanic's lien to that which was added by his material or labor, and prevents it from operating on the whole property. The court has not conceded, as

stated by the Chief-Justice, that the lien of complainant for materials is subordinate to that of the mortgage. We expressly hold, in the language of the statute, that it has priority to the extent of the value of the improvement, and is secondary only as to the property covered by the mortgage before the materials were added.

The fact that the building wholly erected may be sold and removed, goes merely to the remedy. This in no way enlarges or diminishes the force and extent of the lien as declared by the statute, nor can the mere right to remove the building operate to prevent the common-law principle from applying, which would subject buildings subsequently erected to a prior mortgage. It is the statute which has this effect, and if available to protect a building from the operation of the common-law principle, which would subject it to a prior mortgage, it is equally effective to protect additions to the realty, whether by way of "improvements or repairs thereto." If the one is constitutional, the other is, for the same principle is involved in both, and the language of the statute as to both is the same. At common law, a building is merged into, and becomes as much a part of the realty as "repairs thereto;" no more, no less. No fair construction of the statute will lead to any other conclusion. The fact that one may be severed and the other not, has nothing to do with the principle of law. Whether the powers of the court are competent to protect and enforce both liens, is a different question. If a case should arise in which the courts would be unable to afford relief, it would be simply a case of a right without a remedy. We can not yet see that this case is one of that character.

It is conceded that, if six hundred dollars for which the material-man's lien is claimed, had been expended in the erection of an independent building, the statute would prevent the appropriation of the building to the payment of the mortgage in preference to the payment of the material-man's claim. Now, if, by reason of the material added, the property will sell for more by six hundred dollars, than it would have sold for without the material, why should the mortgagee in the one case, any more than in the other, be permitted to appropriate the additional six hundred dollars? How is the mortgagee injured, if he gets 'all he would have received if the material had not been added? and what injustice is there in the rule which secures to the material-man compensation for his labor and materials, by which the value of the property was enhanced. Suppose in this case there had been no insurance, and after the almost total destruction of the mortgage

[Wimberly v. Mayberry & Co.]

security by fire, the mortgagor had procured by contract the rebuilding of the house, expending over three thousand dollars, for which the mechanic's lien attached, could the mortgagee, in the face of the statute, have appropriated the whole property to the payment of his mortgage? Such a construction would convert the statute into a snare to catch the unwary mechanic.

This is the rule which seems to apply in the State of Illinois. The statutes are not exactly alike, but there is no difference so far as the application of the principle is involved. Code of Illinois, p. 665, ch. 82, sec. 1, is as follows: "That any person who shall by contract . . with the owner of any lot or piece of land furnish labor or materials . . in building, altering or repairing any house, building or appurtenances thereto, shall have a lien upon the whole of such lot, and upon such house, or building and appurtenances," &c. Section 2 extends the lien to the interest of the owner, &c. Section 17: "No incumbrances upon the land, created before or after making of a contract under the provisions of this act, shall operate upon the building erected, or materials furnished, until the lien in favor of the person doing the work shall have been satisfied; and upon questions arising between previous incumbrances and creditors, the previous incumbrance shall be preferred to the extent of the value of the land at the time of making the contract; and the court shall ascertain by the jury, or otherwise as the case may require, what proportion of the proceeds of any sale shall be paid to the several parties in interest." In the case of *Bradley v. Simpson*, 93 Ill. 93, construing the mechanic's lien law, the court declared, "Where land is sold under a decree for a mechanic's lien, upon which there is a prior incumbrance, and the proceeds of the sale are not sufficient to pay both the claims as found by the decree, they will be apportioned; and the mortgagee will take such a share of the net proceeds of the sale as the value of the property before the improvements were put upon it bears to the total value of the property after the improvements were made, and no more;" "the parties have the same proportionate interest in the proceeds that they had in the property before it was sold."

In the case of *Crocky v. North-Western Manufacturing Co.*, 48 Ill. 483, the court uses this language: "If, for example, the owner of unincumbered realty, with a building upon it, executes a mortgage thereon, and afterwards has repairs made upon the building, for which a mechanic's lien is enforced, such lien would take priority over the mortgage only to the extent of the additional value given to the property by the

improvements. Thus, if on a house and lot worth fifteen thousand dollars, and subject to a mortgage, additions and improvements are made by the mortgagor in such mode as to make the premises worth eighteen thousand dollars, the mechanic and material-man would have a prior lien to the extent of three-eighteenths of the proceeds of the sale, and the increased market value added to the property would measure the extent of the priority of their claim, without reference to the cost of the materials or labor actually furnished."

We *think these are adjudged cases directly in point, and by respectable authorities*, and are conclusive as far as that court can be regarded as authority, that our construction of the statute does not impart to the lien given for the materials or repairs a force or right which affects vested rights, or in any manner conflicts with *Magna Charta*. The fact that the Illinois statute made special provision that the relative rights of the parties might be ascertained "by a jury, or otherwise as the case may require," in no way affects the question of the extent and priority of the respective liens, as given by the statute; nor does the declaration in the statute, that upon "questions arising between previous incumbrances and creditors, the previous incumbrance shall be preferred to the extent of the value of the land at the time of making the contract." This is the legal effect of sections 3018 and 3019 of the Code, when construed together, and each part of the act is given some effect; and our courts of equity are fully competent to afford the same relief.

The construction contended for by the Chief-Justice would render entirely nugatory the lien given for the betterment to a building or repairs thereto, upon which there was a prior incumbrance. We all agree the statute is not unconstitutional. It must have some operation. It can not be controverted that the powers of the Chancery Court, as exercised in this State, are sufficient to ascertain the proportionate rights of the parties, and by appropriate decrees, either by a sale, or by renting, or permitting the one or the other to redeem, according to the circumstances of the case, protect the respective interests of all parties. Each of the cases cited by the Chief-Justice, including the case of *Gatchell v. Allen*, 34 Iowa, 559, so largely quoted from, were cases where the whole property upon which there was a prior lien at the time of the commencement of the work, or materials were furnished, was subjected by the decree of the lower court to the payment of the mechanic's lien. We hold the same conclusion, and have cited those cases to that point,

as showing the court erred in giving complainant a prior lien
upon the whole building. Furthermore, in the Iowa cases,
we are not informed whether the court in which those cases
originated had equitable jurisdiction and power to apportion
the priorities of the respective liens as has the Chancery
Court. If, in the case before us, it was pending in the Cir-
cuit Court, and no remedy afforded except the statutory
remedy, we would hold that court had no authority to have
the property sold and apply the entire proceeds to the
mechanic's lien. It would present a case in which the
remedy could not be found in a court of law. But, even if
those authorities held to a different rule, we feel constrained
to construe our statute as we have, and to hold that where our
statute says "such lien shall have priority," it means "priority"
in its usual sense, and not "junior lienee" or "subsequent in-
cumbrance," as assumed in the dissenting opinion, and upon
which assumption his argument entirely rests. We think it
is the duty of the court to protect and enforce their respec-
tive priorities as fixed by the statute, in all cases where
the power of the court is competent for this purpose.

The Chief-Justice asks in his opinion why it was the legis-
lature conferred jurisdiction upon courts of equity when the
amount claimed is not less than one hundred dollars. We
have made no investigation of the reasons which influenced
the legislature. We take the law as it is, and we find that
section 3048 provides, that "any lien provided for under the
provisions of this chapter, where the amount claimed is not
less than one hundred dollars, may also be enforced by bill in
equity." The act confers the jurisdiction generally upon a
court of equity; and having jurisdiction, it may enforce the
lien according to its own powers. In the present suit, the sum
involved exceeds one hundred dollars, and the only question
is, whether the Chancery Court is competent to adjust the
equities of the different liens. When the present act was
originally adopted, the legislature may have thought that
under the authority of *Montandon v. Deas*, 14 Ala. 42, the
Chancery Court had jurisdiction without having it specially
conferred by statute. It may have been supposed, that under
the authority of the case of *Westmoreland v. Foster*, 60 Ala.
448, a decision rendered by the present Chief-Justice, where
it is held that a Chancery Court had jurisdiction to enforce
the landlord's lien, independent of the statutory remedy fur-
nished by a court of law. Be this as it may, this court decided
in *Walker v. Dainwood*, 80 Ala. 246, and *Chandler v. Hanna*,
73 Ala. 392, that the Chancery Court did not have jurisdiction
to enforce the mechanic's lien, "in the absence of some special

ground of equitable interposition, such as would render inadequate the remedy prescribed in a court of law;" and after these decisions were rendered, the legislature saw proper to confer jurisdiction generally upon a court of equity to enforce the lien "without alleging or proving any special ground of equitable jurisdiction."

It is impliedly conceded in both the authorities, 80 Ala. and 74 Ala., *supra*, that cases might arise in which the remedy prescribed in a court of law would be inadequate, and it would be necessary to resort to a court of equity. When these decisions were rendered, it would seem the court had in view that the necessity to adjust different equities and conflicting liens might arise under the statute.

The Chief-Justice states as follows: "Under the opinion of the majority of the court, the right and remedy for repairs put on a building which was on the premises at the date of the mortgage would be much more compensating—much more nearly adequate—than if the claim were for an improvement entirely new. Can the legislature have intended this advantage to him who only repairs an old building; over the material-man and mechanic who furnishes materials and constructs a new one? Did the legislature intend to give to the builder this inadequate compensation for an improvement entirely new, and leave it to the courts to secure the repairer, by interpretation, a full *quantum valebat* for what he may have added?"

We would reply by asking, did the legislature intend to compensate, in whole or in part, one who constructs a new building, by permitting him to remove it from the premises, and did the legislature intend to deny all compensation to one who makes the repairs thereto? If so, in what part of the statute is this intent to be found which makes this difference? Why were liens for repairs put upon the same plane as liens for building a structure, if it was expected that the courts would give the two liens, by judicial interpretation, a different plane, making the one a prior lien and the other secondary and subordinate, a mere "well without water?" The opinion further proceeds, "Can it be that the legislature intended to grant the special relief my brothers have awarded to complainant in this case, when the value of the repairs amounts to one hundred dollars or upwards, and to withhold it when it falls below that sum? Would there be any justice in such discrimination?" If the act is plain, it is not for this court to impugn the intent of the legislature. But we call attention to the statement of the Chief-Justice when he summarizes his conclusion under the third proposition. It is as

follows: "The only remedy or recourse left to the material-
man and mechanic was the right to redeem from Wimberly
by paying off the older incumbrance, and *then enforcing the
collective liens for their benefit ;* or they could *enforce their
claim against Mulford's equity of redemption,* or await
*Wimberly's* foreclosure, and *claim payment out of the sur-
plus should anything be left.*"

We ask in what court can *"the collective liens* for *their*
*benefit"* be enforced? or in what court can they *"enforce their*
*claim against Mulford's equity of redemption."* The statute
itself furnishes no such remedy.    A chancery court alone has
jurisdiction of these questions, and we reply, in the language
of the Chief-Justice, Can it be that the legislature intended
to grant the special relief the Chief-Justice contends for where
the collective liens amount to one hundred dollars or upwards,
and withhold it when it falls below that sum? would there be
any justice in such discrimination? The summary of the
Chief-Justice necessarily concedes, that the rights granted to
the mechanic and material-man are, as we hold, independent
of the statutory remedy "specially provided for its enforce-
ment in the statute," as stated in another part of hi s opinion,
and without regard to the limitation of one hundred dollars as
prescribed in section 3048 of the Code, may be enforced in a
court of chancery under section 720 of the Code, which gives
jurisdiction to the Chancery Court "in all civil cases in which
a plain and adequate remedy is not provided in other judicial
tribunals."

The second proposition of the Chief-Justice in his summary
is, "That the material man's and mechanic's lien is inferior to
Wimberly's lien [the mortgage], and bound only Mulford's
equity of redemption."   As to the property covered by the
mortgage when the materials were added, or a building wholly
erected, this is true ; but this is not true, and is directly in
the face of the statute, as to a new building or materials fur-
nished or repairs made.   As to these, the statute directly de-
clares this lien "shall have priority over all other liens, *mort-
gages,* . . . whether existing at the time the materials are
furnished or subsequently created."

To hold that the words "such lien," as used in section 3019,
refer only to the lien given upon a building wholly erected,
would impute to the legislature a want of knowledge of the
ordinary meaning of words, and resolve the section into an
absurdity; for, unless the words "such lien" include the lien
for materials and repairs, then there is no provision in the
statute for enforcing the lien for materials and repairs, even in

9

cases where the mortgage was subsequently created. No one contends that this would be a proper construction of the statute.

We have given the statute a great deal of study. It should be so construed as to give some effect to every clause, and a construction which leaves to a sentence or clause no field of operation, should be avoided as far as possible.—*Lehman v. Robinson*, 59 Ala. 219; *Ex parte Dunlap*, 71 Ala. 73.

Our conclusion is the only solution of the difficult question involved, as we understand the purpose of the statute. It does no injustice to either party; it rests upon equitable principles, and does not violate *Magna Charta*.

STONE, C. J., *dissenting*.—Our statute, § 3018 of the Code of 1886, provides that mechanics and material-men, "who shall do or perform any work or labor upon, or furnish any material, fixtures, . . for any building or improvement on land, or for repairing the same, under or by virtue of any contract with the owner or proprietor thereof, . . . . shall have a lien therefor on such building or improvement, and on the land on which the same is situated, to the extent in ownership of all the right, title and interest owned therein, by such owner or proprietor." Section 3019: "Such lien, as to the land, shall have priority over all other liens, mortgages, or incumbrances, created subsequently to the commencement of the work, on the building or improvement, or repairs thereto; and, as to the building or improvement, it shall have priority over all other liens, mortgages or incumbrances, whether existing at the time of the commencement of such work, or subsequently created; and the person entitled to such lien may, where there is a prior lien, mortgage or incumbrance on the land, have it enforced by a sale of the building or improvement under the provisions of this chapter, and the purchaser may, within a reasonable time thereafter, remove the same." Section 3021: "When a lien attaches under the preceding section [section 3020, which relates to buildings or improvements on land held under lease], the lessor, at any time before a sale of the property, shall have the right to discharge the same by paying to the holder the amount secured thereby." The purpose of this section is to enable the lessor to prevent the removal of the building or improvement from the land, by paying off the lien upon it. The foregoing are all the statutory provisions which are material to a correct decision of this case.

The facts of this case are all clearly shown in the pleadings, and in the agreed statement of facts. There is no dispute of fact about anything this court need decide.

R. M. Mulford occupied as a residence a lot adjoining the city of Birmingham, on which were a dwelling-house and other improvements necessary for its occupancy as a dwelling. Mulford had executed a mortgage on the lot, "together with all and singular the tenements, hereditaments and appurtenances thereto belonging," to T. P. Wimberly, to secure the payment of a note of four thousand dollars, payable at a bank. The mortgage was executed in October, 1889, and was properly recorded in the probate office of Jefferson county, the county in which the lot is situated. At the time the mortgage was executed, Mulford was the owner of the property in fee, and resided on it.

The dwelling was almost destroyed by fire in 1890, but the kitchen part of the dwelling was only partially consumed, and outhouses in the yard were left unharmed. At and before that time the property was under insurance for the benefit of Wimberly, the mortgagee; and when the amount of the loss was adjusted, in August, 1890, the sum of $2,664 was ascertained to be the amount of the loss suffered by the fire, and this was paid by the insurance company. It was then agreed between Wimberly and Mulford that the said insurance money should be expended in restoring the dwelling-house to a habitable condition; the house, when restored, to still continue under the mortgage; and if any sum beyond the $2,664 was expended on the building, Mulford was to supply it, and was to continue in the occupancy of the house, subject to the mortgage. Under this agreement the house was rebuilt on the site of the one burned, and the $2,664 were exhausted in the erection. The house not being completed, or not being finished up to the satisfaction of Mulford, he incurred additional expense in material and workmanship which went into the body of the house. The debt thus incurred is some $600. This additional expense was incurred on credit, without the knowledge or consent of Wimberly, and the act has never been ratified by him. It is not shown that he even knew that the expense being incurred was in excess of the $2,664. The verified statement of materials and workmanship required under sections 3022-3-4 of the Code, was made out against R. M. Mulford, without any notice whatever of Wimberly's claim or mortgage.

The mechanics who did the work, having acquired the ownership of the material-men's claim, filed the present bill to enforce both claims by a sale of the property on which the house was erected—properly, in the present case, on which the house was repaired or completed. The bill was filed January 29, 1891, and sets forth that Mulford was a citizen

[Wimberly v. Mayberry & Co.]

of Jefferson county—the county in which the property is situated—and that Wimberly resided in Lee county, a hundred miles or more away. While the suit was pending, and after Wimberly had answered the bill, to-wit, on March 28, 1891, he sold the property under the power of sale contained in the mortgage, having previously given the requisite notice, and one Hyde was set down as the purchaser at $4,910.41, the amount of the mortgage debt, and the expense of the foreclosure. A deed was made to Hyde, and on the same day the property was reconveyed by Hyde to Wimberly. No money was paid, and it was practically a purchase by Wimberly at his own sale. The mortgage gives to the mortgagee no right to purchase at his own sale.

There are two reasons why the sale under the power can exert no influence in this case. *First*, when the bill was filed—January 29, 1891—no attempt to foreclose the mortgage by sale under the power had been made. If the bill, when filed, contained no equity, the subsequent act of Wimberly can not give it equity. To authorize a suit in chancery for relief, the facts on which complainant relies for recovery must be existent. It is not enough that they come into existence afterwards.—*P. & M. Mut. Ins. Co. v. Selma Sav. Bank*, 63 Ala. 585; *Rapier v. Gulf City Paper Co.*, 64 Ala. 330; *Banks v. Thompson*, 75 Ala. 531; *Malone v. Marriott*, 64 Ala. 486; *Peevey v. Cabaniss*, 70 Ala.; 3 Brick. Dig. 679. *Second*, Wimberly for all equitable purposes being the purchaser at his own sale, the sale and conveyances made did not in the slightest degree impair or change the equitable rights, or the manner of their assertion, that any third person may have had. Subsequent incumbrancers had precisely the same equitable rights after the said sale, as they could have asserted before.

The statute under consideration does not attempt to secure to mechanics or material-men a lien paramount to older valid liens. If it did so attempt, we would be forced to deny such relief, for the attempt would be to deprive the owner of his property without "due process of law." The lien the statute confers is only "to the extent in ownership of all the right, title and interest owned therein by such owner or proprietor." That is, the one who procures the materials to be furnished, or the mechanic's labor to be performed, thereby gives a lien co-extensive with his ownership, and no more. If he have only a leasehold estate, a part interest lesss than the whole, an equity of redemption, or an equitable right to demand or receive title on payment of the purchase-money, the mechanic or material-man acquires a lien on that title or right, and

nothing more. He does not, and can not, acquire a larger right or interest than his employer owned. It is axiomatic, that no one can convey or incumber property beyond the extent of his ownership. I understand Justice COLEMAN, in his opinion, to concede what is stated above.

If the employer (owner or proprietor, as he is designated in the statute) own the unincumbered fee, then no difficulty will be encountered in enforcing the lien. The statute gives a lien, not only on the building or improvement erected, or added to or repaired, but also on the lot on which it stands. The entire property, lot and all, if necessary, can be sold in discharge of the lien, even though that lien be only for repairs put on the building. Such is the statute.

If, however, the owner or proprietor, procuring the work to be done, or materials furnished, has not an unincumbered title to the lot, then the statute provides a different rule. If the workmanship and materials are employed in the erection of a new building or improvement, which can be removed, and leave the property as it was before the building or improvement was commenced, then there is a first and paramount lien on the building or improvement, which can be enforced by a sale of such building or improvement, "and the purchaser may, within a reasonable time thereafter, remove the same." And, in such case, the mechanic and materialman each has an additional lien on whatever title to, or interest in the lot, the owner or proprietor owned at the time the lien commenced to attach. In the two categories stated above, the rights and remedies of the several parties are clearly defined in the statute, and are easy of enforcement.

Cases arise in which the claim of the mechanic or materialman is for labor done or materials furnished for the completion of an unfinished building or improvement, or for repairs on such building or improvement, at a time when the fee-simple title is not in the person who procures the materials to be furnished, or the services to be rendered, and yet both the material and services become so incorporated in the building as not to be separable from it, so as to leave it in the condition it was in before the repairs were made. That is this case. It is manifest that neither a sale of the entire property, nor of the building on which the repairs were put, nor a removal of the building, can be resorted to in such case. Either course would deprive the older lienee, the mortgagee, of his property, without due process of law. It results, that for the case we have in hand the statute points out no specific mode of enforcing the lien. It must, therefore, be determined on equitable principles.

The claim of a mechanic or material-man is at last but a lien—a right to have the claim enforced as a charge. The statute makes it subordinate to all older valid liens; and if it did not, the constitutional barrier would have made it so. *Magna Charta* made it so. Except to the extent the statute provides specially for its enforcement, it stands on no higher plane than other valid liens; and we have seen there is no statutory provision which points out the remedy in a case like this. We have simply the case of a junior lienee attempting to collect his claim out of property that is subject to an older valid lien. In the opinion of my brother COLEMAN it is admitted that Wimberly's claim is the older, and its *bona fides* is not questioned. Suppose the complainants in this case filled the position of a junior mortgagee, and, to make the analogy striking, suppose the consideration of such junior mortgage had been for money which was expended in repairs on the house covered by the senior mortgage; or, suppose the case of a vendor's lien for unpaid purchase-money, no title being made, and a mechanic asserting a lien against the vendee in possession for repairs put upon and incorporated in a dwelling that was on the premises before the agreement of sale. Can ingenuity draw a distinction in principle between either of the cases supposed and the case we have in hand? And would any one contend, in either of the cases supposed, that any other principle was involved than that which always obtains when there is a junior and a senior mortgagee?

I hold the following propositions are so clearly established, that not a respectable authority can be found in opposition to either of them : *First*, the mortgage to Wimberly being duly spread on the records of the county in which the lot was situated, and that mortgage being the older lien, this, in law, was and is the equivalent of actual notice to the mechanic and material-man of the existence of that older lien.—3 Brick. Dig., p. 679, §§ 8, 9. *Second*, the complainants in this case, being only subsequent incumbrancers, had no right, either at law or in equity, to compel that older mortgagee to enforce his lien, either by foreclosure or otherwise, in order that their junior interests might be carved out of it. Their only right, like that of any other junior incumbrancer, was to redeem the property from the older lienee, and thereby secure their subrogation to his rights.—*Kelly v. Longshore*, 78 Ala. 203, and authorities cited. *Third*, there is not an adjudged case, not even including those cited by my brother COLEMAN, which holds that a junior incumbrancer, although his labor or money may have enhanced the value of the security, can coerce the

[Wimberly v. Mayberry & Co.]

enforcement of the lien, as a means of carving his alleged interest or lien out of it, unless there is a statute conferring the right.

Our statute giving to mechanics and material-men a lien was approved March 6, 1876. Before that time we had no statute on the subject, that was like the present one.—Code of 1867, §§ 3101–4. Its provisions, so far as the principles necessary to be decided in this case are concerned, are identical with those of the Code of Iowa, §§ 2130, 2139, 2140, 2141. The Iowa Code was adopted in 1873, three years before our statute was enacted. The complete identity of language found in each of the systems, on the points material to this case, demonstrates that our statute, being the later, must have been copied from the Iowa statute. Such identity of expression could not be accidental.

The substantial re-enactment of a statute which has been construed, and has acquired a fixed judicial construction, is a legislative adoption of that construction.—3 Brick. Dig. 749, § 16. Seven of our decisions are cited in favor of this principle. *Getshell v. Allen*, 34 Iowa, 559, was decided in 1872, four years before our statute was enacted. The Iowa statute was of force before that time.—Iowa Code of 1851, §§ 981, *et seq.* The Iowa case was not distinguishable in purpose or principle from the one we have in hand. The court said : "In the case of a mortgage upon land and the buildings thereon, made before the mechanic's lien attaches, the mortgagee will hold the property as against the mechanic. How is it when improvements in the way of additions of repairs to the building are made after such mortgage ? The mortgage binds the house; the improvements of the character indicated become a part of the house, and are, as it were, incorporated with it. After the improvements are made, they do not remain separate and distinct from the building. They have lost their distinctive character; the house includes them, they are a part of the house; the mechanic's lien can not defeat the mortgagee's right. And for the same reason, section 1855 does not apply to such a case. That section simply provides, that a mechanic's lien for work or materials furnished to erect buildings, after the execution of a mortgage on the land, is a paramount lien against the buildings, but is not a lien on the land. But, if the mortgage covers the building, the mechanic can not enforce his lien against it, and cause it to be sold and separated from the land. These views, we think, are based upon sound principles, and lead to equitable results. Should a contrary doctrine prevail, it would be within the power of a mortgagor to ruin the security of this creditor, by making im-

provements upon the building covered by the mortgage, which, in fact and in law, would but become a part of the building itself. The case before us serves to illustrate the injustice of such a rule. Another story is added to a house, already bound by the mortgage. The story can not be separated from the house; it is a part of it. It would be a great hardship to the mortgagee to permit his security to be defeated or impaired by the act of the mortgagor, in thus adding to his building. The mechanic or material-man can not complain. He had notice of the mortgage, and knew, or was bound to know, the purposes for which the materials were furnished, or work was done by him."

The language copied is taken entirely from Chief-Justice Beck's opinion, on a statute from which ours was in substance copied, and in a case from which ours is not distinguishable in principle. Is there any hitch, or faulty link in the reasoning of Chief-Justice Beck? Can it be answered?

As I understand the opinion of my brother COLEMAN, he concedes that Wimberly's mortgage has an older and paramount lien. And he does not contend that the mechanic or material-man can claim a lien for the value or agreed price of the materials and work put into the house. Their lien extends, according to his views, only to the enhancement of price caused thereby, which the house and other property covered by the mortgage will bring, when put to sale. Now, how is this to be ascertained? The house must needs be sold as an entirety, and hence the sale will furnish no data for determining the enhancement of price. Is it to be ascertained by a reference, and on opinion evidence? Is it just to a paramount lienee—nay, is it lawful—to carve out of his security a junior incumbrance, placed there without his consent, and to fix its value or amount on testimony such as this? The statute gives a lien—a junior lien—for the value of the materials and mechanical labor, and it gives it for the whole value. It gives it in no other form. In a case like this, that lien is on the equity of redemption; Mulford's ownership of the property. On what principle can that lien be transformed into a lien on the whole property, for the enhanced value imparted to it by the material and workmanship furnished, and that lien made enforceable *pari passu* with the older mortgage lien? The statute confers no such lien, and provides no machinery for carving it out. No adjudged case can be found which justifies such proceeding under a statute like ours. The Illinois cases cited by my brother COLEMAN are rested on the express language of their statute, which directs in what manner the lien for repairs must be

[Wimberly v. Mayberry & Co.]

enforced. That court simply followed the statute of that State. We have no such statute, and yet the majority opinion of my brothers supplies the omitted clause, and construes our statute as if it were a copy of the Illinois statute.

An additional argument: When an entirely new building or improvement is erected at the instance of the mortgagor, on land previously mortgaged by him, the statute declares a lien in favor of the mechanic and material-man, and the extent of it. It is on the building or improvement so erected, which may be sold and removed from the premises. This is the remedy given by statute, and it gives no other, except a lien on the mortgagor's equity of redemption. It is manifest that the lien on the building, with the right to sell and remove it, would in most cases be very inadequate security. All men know that the sale of a building—even of a frame building—if the purchaser be required to remove it from the premises, would yield only a fraction of the value of the materials and workmanship employed in its construction. And if the building were of brick, this disparity would be much greater. Yet it is manifest that in case of an entirely new building on land previously mortgaged, sale and removal would be the only means of enforcing the lien of the mechanic and material man. This, because this statute, which secures the lien, gives this remedy for its enforcement.

Now, under the opinion of the majority of the court, the right and remedy for repairs put on a building which was on the premises at the date of the mortgage, would be much more compensating—much more nearly adequate—than if the claim were for an improvement entirely new. Can the legislature have intended this advantage to him who only repairs an old building, over the material-man and mechanic who furnish materials and construct a new one? Did the legislature intend to give to the builder this inadequate compensation for an improvement entirely new, and leave it to the courts to secure to the repairer, by interpretation, a full *quantum valebat* for what he may have added?

The present proceeding is in equity. The very nature of the relief granted in the majority opinion in this case forbids that it shall, or can be awarded, in any court other than one having chancery jurisdiction. Liens secured to mechanics and material-men under our statutes are enforceable in equity, only "when the amount claimed is not less than one hundred dollars," unless a special ground of equity jurisdiction is alleged and proved.—Code of 1886, § 3048. I have shown that the complainant is without semblance of equitable right to compel Wimberly to foreclose his mortgage, and have thus

[Thorington v. City Council of Montgomery.]

shown that the present bill is without "special ground of equitable jurisdiction." Can it be that the legislature intended to grant the special relief my brothers have awarded to complainant in this case, when the value of repairs amounts to one hundred dollars or upwards, and to withhold it when it falls below that sum? Would there be any justice in such discrimination? We presume the legislature intended to deal equally and fairly, and hence should not, by interpretation, stretch this purely statutory, yet beneficial system, to consequences the legislature did not express, and could not have intended.

I summarize my own conclusions: *First*, at the time when the materials and workmanship were furnished in this case, Wimberly's mortgage was on record. This, in law, was the same as if the material-man had had actual notice of the mortgage, and that Mulford's ownership was only an equity of redemption. *Second*, the material-man and mechanic each acquired a lien, but it was inferior to Wimberly's lien, and bound only Mulford's equity of redemption. *Third*, the only remedy or recourse left to the material-man and mechanic was the right to redeem from Wimberly by paying off the older incumbrance, and then enforcing the collective liens for their benefit; or, they could have enforced their claim against Mulford's equity of redemption; or they could await Wimberly's foreclosure, and claim payment of the surplus, should anything be left.

It is my conclusion, that the decree in this case should be reversed, and the bill dismissed.

CLOPTON, J., concurs in this opinion.